PARK et al., Appellees,

v.

AMBROSE, Appellant.

[Cite as *Park v. Ambrose* (1993), 85 Ohio App.3d 179.]

Court of Appeals of Ohio,
Ross County.

No. 92 CA 1785.

Decided Jan. 22, 1993.

*Barrington Law Offices* and *Deborah Douglas Barrington,* for appellees. *Edward J. Brown,* for appellant.

STEPHENSON, Presiding Judge.

This is an appeal from a judgment entered by the Ross County Court of Common Pleas, Juvenile Division, establishing that John H. Ambrose, defendant below and appellant herein, was the father of Tonia Lynn Rairdon, plaintiff below and appellee herein, and ordering appellant to pay child support arrearages to Rairdon and her mother, Joyce Gay Park, plaintiff below and appellee herein, in the amount of $12,082.93. Appellant assigns the following errors for our review:

"I. The court erred to the prejudice of the appellant because it did not have subject matter jurisdiction to award child support.

"II. The court erred to the prejudice of the appellant in not holding that an implied agreement barred the award of child support.

"III. The court erred to the prejudice of the appellant in not holding that child support was barred by laches, estoppel or waiver.

"IV. The court erred to the prejudice of the appellant in holding that the claim of child support of Joyce Gay Park was not barred by the statute of limitations.

"V. The court erred to the prejudice of the appellant by awarding child support when the complaint did not specify an amount.

"VI. The court erred to the prejudice of the appellant by not holding that the Ross County Department of Human Services was barred from any claim because it did not present evidence.

"VII. The court erred to the prejudice of the appellant because the award of child support after the child became an adult violated the Equal Protection Clause of the Fourteenth Amendment."

The record reveals the following facts pertinent to this appeal. On March 12, 1969, Park gave birth to Tonia Lynn Cooper, n.k.a. Tonia Lynn Rairdon. At approximately the same time, appellant, the putative father, left Ohio and moved to Georgia, where he still resides. During Rairdon's minority, Park was married twice and knew of appellant's whereabouts. She did not, however, attempt to establish parentage or seek child support from appellant.

On December 7, 1989, more than twenty years after Rairdon's birth, Park and Rairdon filed a complaint against appellant pursuant to R.C. 3111.04 in the Juvenile Division of the Ross County Common Pleas Court, requesting that the court determine parentage and impose child support arrearages. Appellant filed for summary judgment, contesting the jurisdiction of the court to award child support and on the issue of the timeliness of Park's filing. The court overruled appellant's motions.

The issue of Rairdon's parentage was tried separately and appellant was found to be her father. No appeal is taken from that determination.

The matter proceeded to hearing before a referee on the remaining issues. On February 12, 1991, the referee filed a report finding that an amount of child support arrearage existed and awarded child support from the date of Rairdon's birth. Appellant filed objections to the report on February 22, 1991. After a hearing on the objections, the trial court filed its judgment entry approving the report of the referee on May 2, 1991. This appeal followed.

At the outset, we note that this is a difficult and troubling case involving legal issues which are neither addressed by statute nor discussed by case law or commentator. The resolution of these issues requires that we weigh the equities of each possible outcome in order to determine the most just results. This has caused more than just a few problems for the members of this court. Nevertheless, until such time as the General Assembly addresses these problems or the Supreme Court gives us some guidance on the issues, we must resolve them in a manner which is consistent with the statutory scheme of the parentage provisions and general principles of law. With this in mind, we turn our attention to the merits of the appeal.

■ In his first assignment of error, appellant asserts that the trial court lacked the requisite subject matter jurisdiction to make a child support award. We disagree. Appellant contends that because Rairdon was no longer a minor at the time the complaint for child support was filed, the court did not have the "custodial jurisdiction" it would have had to determine the payment of child support, visitation and custody had the complaint been filed during her minority. Again, we disagree. Jurisdiction of a court connotes the power to hear and decide a case on its merits. *Morrison v. Steiner* (1972), 32 Ohio St.2d 86, 61 O.O.2d 335, 290 N.E.2d 841, at paragraph one of the syllabus. The juvenile court has jurisdiction over parentage actions. R.C. 3111.06. The provisions of R.C. 3111.04 permit an action to be filed to determine the existence or non-existence of a father-child relationship. After such relationship is established, R.C. 3111.13 permits a trial court to make a support order and R.C. 3111.16 permits the court to enforce that order. The court below clearly had jurisdiction over the parent-

age action brought by appellees and, therefore, authority to enter a child support order. Accordingly, the assignment of error is overruled.[1]

In his second assignment of error, appellant argues that the lower court erred by not finding an implied agreement between the parties barring the award of child support. We disagree. The provisions of R.C. 3111.04(A) and (B) expressly state that an agreement will not bar a parentage action brought by a child or the child's mother. Appellant cites several unreported appellate cases where the courts have denied awards of child support arrearages on the basis of agreements between the parties. For the most part, these cases involve collection of previously determined child support and did not arise in the context of a parentage action under R.C. Chapter 3111. Accordingly, they are inapposite to the cause *sub judice* and do not contravene the aforementioned statute.[2] The second assignment of error is overruled.

In his third assignment of error, appellant asserts that appellees waived their rights to maintain an action for child support because they waited until Rairdon was beyond the age of majority. Appellant further asserts that the claims are barred by the equitable doctrine of laches. To an extent, we agree.

---

1. A more troublesome problem is whether the court, notwithstanding its jurisdiction over the case, exceeded its statutory authority in awarding back child support to a mother and her emancipated adult daughter. There is no provision in R.C. Chapter 3111 which allows for retroactive child support to be awarded or permits such an award to be made to an adult child. The provisions of R.C. 3111.13(C) allow for an award of child support incident to a parentage determination, but do not explain whether such support is to be made for meeting current needs of a minor child or may be used for rectifying perceived needs in an adult child's past. The statutory factors at subsection (E) suggest that a support award in a parentage action is meant to help meet a child's current needs. If that is the case, then little is gained by awarding retroactive support to an emancipated adult child. We acknowledge the existence of case law in Ohio where awards of back child support in similar actions have been from time of birth. See, *e.g., Edwards v. Sadusky* (1982), 4 Ohio App.3d 297, 300, 4 OBR 548, 550, 448 N.E.2d 506, 509–10; *Baugh v. Carter* (1981), 3 Ohio App.3d 139, 141, 3 OBR 157, 158–159, 444 N.E.2d 58, 61; *State ex rel. Raydel v. Raible* (App.1954), 69 Ohio Law Abs. 356, 368, 117 N.E.2d 480, 487. However, these cases all involved young children rather than an adult child. Fortunately, we need not resolve this issue. Irrespective of whether the court may have exceeded its statutory authority in awarding retroactive support to an adult child, the fact remains that it clearly had jurisdiction to hear and determine the merits of a parentage action.

2. Appellant cites the case of *Shafer v. Eubanks* (Nov. 13, 1989), Stark App. No. CA–7830, unreported, 1989 WL 137248, wherein the Fifth District Court of Appeals held that a sixteen-year delay in the bringing of a paternity action was a special circumstance which would justify a trial court's decision not to award child support from time of birth. Appellant's reliance on *Shafer* is misplaced because (1) the court held that the delay was a special circumstance rather than an agreement which would contravene the statute, and (2) the court's ruling was based on a review of the lower court's use of its discretion and does not set forth a *per se* rule that such a delay relieves the father of support obligations.

In *Wright v. Oliver* (1988), 35 Ohio St.3d 10, 517 N.E.2d 883, the Ohio Supreme Court held:

"Laches may be applicable to parentage actions filed prior to the expiration of the statute of limitations, but only if the defendant can show material prejudice." (Citations omitted.) *Id.* at the syllabus.

■ Pursuant to *Wright,* the affirmative defense of laches is applicable to this parentage action. However, we must determine if appellant was materially prejudiced by the failure to establish paternity and to seek child support during the child's minority.

The single mother of an illegitimate child has the right to establish paternity and to obtain support from the natural father. But, as with any right, the mother may decide to forgo that right and elect to raise the child by herself without any interference or contribution from the father. If the natural father is interested in the child, he may enforce his paternal rights by establishing paternity, an amount for support, and visitation, or perhaps even custody. He, too, may waive those rights by his inaction.

Traditionally, the law has allowed the parent of a child to do what he or she thinks is best for the child and we do not construe the Uniform Parentage Act as abrogating that principle. A mother might reasonably believe that the advantage of child support is outweighed by the disadvantage of having the natural father's paternity, and ensuing rights, established. A father might well believe that his child is better off with the stepfather. These are personal choices and the courts ought not to interfere, except in the interests of the child.

The record in this case makes it clear that Park wanted appellant to have no part in raising their daughter. She neither requested child support during Rairdon's minority nor did she establish any visitation schedule for appellant. To comply with Park's stated wishes, appellant did not try to contact either mother or daughter. All contact was initiated by Park or Rairdon. We view Park's failure to timely initiate a parentage action and request child support as a waiver of her right to support.

Now, twenty years after her daughter's birth, Park requests retroactive child support. The prejudice to appellant is patent. While R.C. 3111.13 permits a trial court to award child support which might have been paid in the past, it cannot rewrite the past. Although there are child support arrearages, there are no "visitation" or "custody" arrearages after the child has grown to adulthood.

Appellant has now been ordered to pay child support but received no benefit from being a father during his daughter's formative years. He had no right to visit her or spend time with her. Appellant was deprived of such an opportunity

during his daughter's minority, but, as we noted above, he waived those rights by failing to assert them during the term of her minority.

The same principles apply with respect to the mother. Park was entitled to reasonable child support from appellant, but she, too, elected to waive those rights by failing to assert them during the term of the child's minority. Had she asserted her right to support from the father, the father would have been able to counter with an assertion of his rights. Thus, we find that appellant was materially prejudiced by Park's decision to delay the matter until the child had reached the age of majority.

The non-custodial parent is more than a mere money machine. Each parent can contribute to the well-being of a child, regardless of which one has custody. The prejudice to the custodial parent who receives no support is obvious. The prejudice to the non-custodial parent who is denied any input to the child's rearing is just as obvious. Therefore, we agree that Park's claim for child support arrearage is barred by the doctrine of laches.

However, Rairdon's claim is another matter. A child's claim in a parentage action brought under R.C. Chapter 3111 is separate and distinct from that of the mother. *Rees v. Heimberger* (1989), 60 Ohio App.3d 45, 46, 573 N.E.2d 189, 192. It would seem unjust to allow those actions taken by Park during her daughter's infancy to negate the child's claim for paternal support. In short, a mother's laches should not be imputed so as to bar a daughter's recovery of support. See, generally, *M.A.D. v. P.R.* (Minn.1979), 277 N.W.2d 27, 30. Appellant cites no authority in support of the contrary position and we are not aware of any. Therefore, we reject the argument that Rairdon's claims are barred by laches. The third assignment of error is sustained in part and overruled in part.

In his fourth assignment of error, appellant argues that Park's claim against him is barred by the statute of limitations. The child was born in March 1969. Appellant contends that, at the time of her birth, "the old paternity statutes" provided a four-year statute of limitations from the date of the birth of the child. In that the action below was not commenced until 1989, and given that a claim for support could not be revived by the new statutes enacted in 1982, appellant concludes that Park's claim was barred. We disagree.

Appellant cites the decision in *Manley v. Howard* (1985), 25 Ohio App.3d 1, 25 OBR 30, 495 N.E.2d 436, which discussed the four-year statute of limitations in R.C. 2305.09. Several years later, the Supreme Court in *Wright, supra,* 35 Ohio St.3d at 10, 517 N.E.2d at 884, addressed the question of whether the defense of laches was applicable in parentage actions filed prior to the expiration of the statute of limitations. In that case, the child was born in 1978 and the parentage

action was commenced in 1985, *more than* four years after the child's birth. In resolving the laches issue, the court opined as follows:

"The issue presented in this cause is whether the equitable doctrine of laches is available to prevent the prosecution of a parentage action brought within the statute of limitations. We hold that laches may be available as a defense in a parentage action if the defendant can show he was materially prejudiced by the delay.

"The statute of limitations for commencing a parentage action is five years after the child reaches the age of eighteen. R.C. 3111.05. This suit was brought when [the child] was seven years old. Thus, *it is undisputed that it was filed well within the statute of limitations.*" (Emphasis added and footnote omitted.) *Id.* at 11, 517 N.E.2d at 884–885.

The conclusion which has been drawn from this passage is that the court believes the statute of limitations for parentage actions is five years after the child reaches eighteen years of age irrespective of whether the child was born more than four years before the effective date of R.C. 3111.05. See *Marcy v. McCommons* (1988), 55 Ohio App.3d 191, 193, 563 N.E.2d 315, 316. We agree. The child in the cause *sub judice* reached eighteen years of age on March 12, 1987, and the action was commenced below in 1989. This is well within the five-year period permitted by R.C. 3111.05 and, accordingly, the assignment of error is overruled.

Appellant's fifth assignment of error advances that the lower court erred in awarding child support when the complaint did not specify an amount. We reject this argument. Appellant's brief does not contain a separate argument on this assignment of error as required by App.R. 16(A). In its place, there is a repetition of appellant's third assignment of error and its accompanying argument. An appellate court may disregard any assignment of error for which the appellant fails to make a separate argument. See App.R. 12(A)(2); see, also, *State v. Newberry* (1991), 77 Ohio App.3d 818, 820, 603 N.E.2d 1086, 1088, at fn. 1; *State v. Houseman* (1990), 70 Ohio App.3d 499, 507, 591 N.E.2d 405, 410; *State v. Caldwell* (1992), 79 Ohio App.3d 667, 607 N.E.2d 1096, fn. 3. Accordingly, the fifth assignment of error is overruled.

In his sixth assignment of error, appellant argues that the lower court erred in not ruling that the Ross County Department of Human Services (hereinafter referred to as "RCDHS") was barred from any future claim against appellant after that agency was joined as a party to that action and then failed to present any evidence. We disagree. RCDHS was joined as a party below in the "Report of Referee and Journal Entry" filed on October 30, 1990. Notations appearing at the end of this entry suggest that copies were forwarded to

RCDHS. However, there is no indication that there was ever any formal service of process made on that agency.

The provisions of Civ.R. 3(A) expressly state that "[a] civil action is commenced by filing a complaint with the court, *if service is obtained within one year* from such filing * * *." (Emphasis added.) In those instances where effective service is not carried out against a named party in an action, the action is deemed to have never been commenced against that party. *Lash v. Miller* (1977), 50 Ohio St.2d 63, 64–65, 4 O.O.3d 155, 156, 362 N.E.2d 642, 643; *Buckeye Union Ins. Co. v. Regional Transit Auth.* (1983), 14 Ohio Misc.2d 11, 12, 14 OBR 423, 424, 471 N.E.2d 885, 886. In essence, the action is a "nullity" as against that party. See *Lash, supra,* 50 Ohio St.2d at 65, 4 O.O.3d at 156, 362 N.E.2d at 643.

Applying these principles to the cause *sub judice,* we hold that the joinder of RCDHS as a party below was ineffective because service of process was not completed within one year thereafter. It stands to reason that, if the joinder was ineffective, then the lower court did not err in failing to enter judgment against that agency barring any future claim against appellant. The assignment of error is, therefore, overruled.

 We now turn to appellant's final assignment of error, wherein he argues that Park's request of child support at a time when the right of visitation (corresponding with the duty of support) had expired violated his equal protection rights as guaranteed by the Fourteenth Amendment to the United States Constitution. Appellant asserts that the non-custodial parent is treated differently from the custodial parent when the custodial parent is permitted to file a claim such as is presently before this court after the child has reached the age of majority. We disagree. Appellant's failure to obtain any parental rights is solely the result of his decision not to seek enforcement of that right. The issue here is equitable, not constitutional. The parents of this child elected to sleep on their respective rights during her minority. Appellant's right is barred by the passage of time just as Park's rights are time barred by the doctrine of laches. The assignment of error is, accordingly, overruled.

Having sustained, in part, appellant's third assignment of error, we reverse the judgment as to Park and affirm it as to Rairdon.

*Judgment affirmed in part*
*and reversed in part.*

HARSHA, J., concurs.

GREY, J., dissents.