JUDGMENT: Reversed and Remanded
 OPINION
Appellant Gloria Spires and Shelly Wilson appeal a judgment of the Muskingum County Common Pleas Court, Juvenile Division, finding that it lacked subject matter jurisdiction over their claim for retroactive child support:
ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT FOUND [SIC] HELD IT LACKED JURISDICTION TO ISSUE AN AWARD OF RETROACTIVE CHILD SUPPORT IN A PARENTAGE ACTION PROPERLY BROUGHT PURSUANT TO REVISED CODE CHAPTER 3111.
Appellant Muskingum County Child Support Enforcement Agency (CSEA) assigns three errors to the same judgment:
ASSIGNMENTS OF ERROR
 THE TRIAL COURT ERRED AS A MATTER OF LAW IN DISMISSING THE REQUEST FOR RETROACTIVE CHILD SUPPORT FOR LACK OF SUBJECT MATTER JURISDICTION AND IN FAILING TO AWARD RETROACTIVE CHILD SUPPORT WHERE IT IS UNCONTROVERTED THAT:
 THE MATTER OF RETROACTIVE CHILD SUPPORT WAS BROUGHT AS PART OF A PATERNITY PROCEEDING. THE CHILD, SHELLY RENEE' WILSON WAS 21 YEARS OF AGE AT THE TIME OF THE HEARING FOR RETROACTIVE CHILD SUPPORT.
 THE COURT FOUND THE EXISTENCE OF THE PARENT-CHILD RELATIONSHIP BETWEEN SHELLY RENEE' WILSON AND STEPHEN BENNETT MOORE.
 THE APPELLEE SHOULD HAVE PAID THE SUM OF $70,179 AS SUPPORT FOR SHELLY BETWEEN THE YEARS 1977 AND 1994, BASED ON THE CHILD SUPPORT GUIDELINES.
 THE APPELLEE FAILED TO SUPPORT SHELLY AS REQUIRED BY LAW. THE STATE OF OHIO DID SUPPORT SHELLY THROUGH THE AFDC PROGRAM.
 THE TRIAL COURT ERRED IN CONCLUDING THAT THE PROVISIONS OF OHIO REV. CODE 2151.23 (F)(2) AND OHIO REV. CODE 3109.05 CONTROLLED AND LIMITED IT'S JURISDICTION OVER THE ISSUE OF RETROACTIVE CHILD SUPPORT IN AN ACTION BROUGHT BEFORE IT UNDER THE OHIO PARENTAGE ACT CODIFIED AS 3111.01 THROUGH 3111.19 (RECORD-MAGISTRATE'S DECISION AND COURT'S ORDER FILED AUGUST 20, 1998).
 THE TRIAL COURT ERRED IN PLACING THE BURDEN OF PROOF ON THE APPELLANTS WHERE THE APPELLEE HAS RAISED THE ISSUE OF LACHES AS AN AFFIRMATIVE DEFENSE TO THE CHILD SUPPORT ISSUES AND WHEN THE APPELLEE'S ONLY CLAIM TO MATERIAL PREJUDICE IS:
 QUESTION: CAN YOU EXPLAIN TO THE COURT WHY YOU BELIEVE THAT YOU'D BE MATERIALLY PREJUDICED IF YOU WERE REQUIRED TO PAY THE CALCULATED CHILD SUPPORT AMOUNT?"
 ANSWER OF APPELLEE: "THE MONEY IS NOT AS IMPORTANT, IT IS JUST A FACTOR. THE MAIN PROBLEM I SEE IS THAT THERE WAS HUGE GAPS IN THE SUIT BEING FILED BY THE JUVENILE AUTHORITY. THERE IS A 13-YEAR GAP AT ONE POINT WHERE NOTHING, ABSOLUTELY NOTHING, WAS DONE AND BECAUSE OF ALL OF THESE GAPS, I WAS DENIED THE ABILITY TO BASICALLY OBTAIN PARTIAL CUSTODY. BY THE SAME TOKEN, OF COURSE, I COULD HAVE FILED SUIT ON MY OWN, HOWEVER, THE LAST CORRESPONDENCE THAT I HAD WITH MISS WILSON WAS LIKE 1978, APRIL I THINK. IT WAS PRETTY MUCH KNOWN AT THAT TIME, SHE WAS FINE THE WAY SHE WAS, SHE HAD ANOTHER BOYFRIEND, AND THERE WAS NOT REALLY ROOM FOR ME THERE SO THAT'S PRETTY MUCH THE DIRECTION I WENT. HOWEVER, IT SEEMS BASICALLY UNFAIR, TO ASK SOMEONE TO WAIT UNTIL THE CHILD IS GROWN AND THEN ASK THEM TO PAY FOR IT. HAD THEY COME TO ME, WELL, HAD THEY FOLLOWED [SIC]THE SUIT IN 78, OR AT LEAST IN 1982, WE COULD HAVE, I THINK IT WOULD HAVE BEEN MUCH MORE FAIR TO EVERYONE INVOLVED." (TR. AT P. 6)
Appellant Spires gave birth to appellant Wilson on January 12, 1977. When appellant Spires was approximately six months pregnant, she informed the Department of Human Services that appellee was the father her child. No steps were taken at that time to establish paternity. On September 14, 1979, a paternity complaint was filed by the local prosecutor's office as a requirement of appellant Spires receiving government assistance. Appellee retained an attorney to represent him. Due to problems with service of notice of the hearing, the case was dismissed without adjudication on December 12, 1981. On September 12, 1995, when Shelly was 20 years old, CSEA filed the instant paternity action. Following a blood test demonstrating a 99.58% probability that appellee was Shelly's father, the court entered judgment of paternity. The case was then set for hearing on the issue of retroactive support. The parties stipulated as to the amount of support owed under the guidelines from the date of Shelly's birth to her 18th birthday. However, the case proceeded to a hearing before a magistrate on appellee's defense of laches. Following the hearing, the magistrate found that the court lacked subject matter jurisdiction over a claim for support brought after the emancipation of a child. After objections, the court entered judgment in accordance with the magistrate's finding.
 I
All appellants assign error to the court's finding that it lacked subject-matter jurisdiction over the request for support. R.C.2151.23 sets forth the jurisdiction of the juvenile court. R.C.2151.23 (B)(2) provides that the juvenile court has the jurisdiction to determine the paternity of any child alleged to have been born out of wedlock pursuant to R.C. 3111.01 to 3111.19. R.C. 3111.05 provides that an action to determine the existence or non-existence of the father and child relationship may not be brought later than five years after the child reaches the age of 18. As appellant Wilson was 20 years and 8 months old on the date the instant action was filed, it is undisputed that the action was timely. R.C. 3111.13 sets out the types of relief available in a paternity action. R.C. 3111.13 (C) allows the court to enter "any other provision" concerning the duty of support. Because the instant paternity action was brought within the statute of limitations and because an award of child support is one type of relief available in a paternity action. The court erred in concluding that it lacked subject matter jurisdiction. In Park v. Ambrose (1993), 85 Ohio App.3d 179, the Ross County Court of Appeals considered a claim of error in a court's award of child support arrearage on a complaint filed when the child was past the age of 20. Facing the identical issue raised in the instant case, the court concluded that the trial court had subject matter jurisdiction. Id. at 182. The court had jurisdiction over paternity actions pursuant to R.C. 3111.06, and after paternity was established, R.C. 3111.13 permitted the court to make a support order. Id. The court did note that R.C. 3111.13 (C), which allows for an award of child support incident to a parentage determination, does not explain whether such support is to be made only for meeting current needs of a minor child, or may also be used for rectifying perceived needs in an adult child's past. Id. at 183, footnote 1. However, irrespective of whether the court may have exceeded its statutory authority in awarding retroactive support to an adult child, the fact remains that it clearly had jurisdiction to hear and determine the merits of the entire parentage action, including the claim for support. Id. In Beach v. Poole (1996), 111 Ohio App.3d 710, this court considered the issue of whether a trial court may order back child support in a paternity proceeding, brought while the child was still a minor. In concluding that the court may make such an award, we reasoned that R.C. 3111.05 provides that a parentage action may be brought up to five years after the child reaches the age of majority. Id. at 712. Because the duty of a parent to support a child generally extends to the child's 18th birthday, it would be illogical to extend the time in which the parentage action could be brought to beyond the child's majority if the legislature contemplated that only current support could be awarded in the action. Id., citing Seegert v. Zietlow (1994), 95 Ohio App.3d 451, 460. The trial court relied on Snider v. Lillie (October 17, 1997), Hamilton Appellate No. C-961014, unreported. In Snider, the court concluded that the right to determine one's parentage is separate and distinct from the right to support. The court concluded that while there were logical reasons for extending the time in which a claim to establish paternity may be brought, involving serious emotional and psychological issues, such concerns did not extend to the right to support. The court concluded that because the jurisdiction of the juvenile court over a child ends at age 18, the court lacked subject-matter jurisdiction over a claim for support brought after the eighteenth birthday of a child. We disagree with the reasoning of Snider. R.C. 3111.13 (C) gives the court authority to enter any order concerning support, following a determination of parentage. The statute does not distinguish between those claims brought while a child is under the age of 18, and those brought after the age of 18. While the statute is not clear concerning whether such an order of retroactive support is appropriate when brought after the child is emancipated, the statute clearly confers jurisdiction on the court to make such a determination. While equitable defenses such as waiver and latches may render an award inappropriate, the court has jurisdiction to consider the claim. The first assignment of error is sustained.
 II
Appellant CSEA argues that the court erred in applying the jurisdictional statutes of R.C. 2151.23 and R.C. 3109.05, rather than the statutes found in the Parentage Act, codified as R.C.3111.01 through R.C. 3111.19. Because we have concluded in Assignment of Error I that the court erred in finding lack of subject matter jurisdiction, this assignment of error is rendered moot.
 III
Appellant CSEA argues that appellee has not established his defense of laches. Because the court did not find the claim barred by laches, this assignment of error is not ripe for review at this time.
The judgment of the Muskingum County Juvenile Court is reversed. This case is remanded to that court for further proceedings according to law.
By Gwin, J., Wise, P.J., and Hoffman, J., concur