DECISION AND JUDGMENT ENTRY
{¶ 1} Henry Walk appeals a judgment of the Lawrence County Common Pleas Court, Probate-Juvenile Division, awarding Carolyn Bryant birthing expenses and retroactive child support under R.C.3111.13. Walk contends the court erred in concluding the doctrines of laches and waiver did not bar Bryant's claim. He also contends the court erred in awarding retroactive child support despite evidence that he had provided support for the child and attempted to establish paternity. We conclude the court did not abuse its discretion in awarding birthing expenses and retroactive child support. First, Walk failed to establish material prejudice, which is necessary to prove laches. Second, Walk failed to establish that Bryant waived her right to assert a claim for child support. Finally, it appears the court considered the facts of the case and concluded that an award of retroactive child support was appropriate. Given the evidence, we cannot say that this conclusion is unreasonable, unconscionable, or arbitrary. In addition, Walk challenges the amount of the court's award. He claims the court used incorrect income figures to calculate the amount of child support and ordered an incorrect amount for birthing expenses. Having reviewed the record, we agree. Thus, we remand this cause for a recalculation of the child support amount and a redetermination of Walk's obligation for Bryant's birthing expenses.
 {¶ 2} In 1994, Carolyn Bryant and her husband separated. While separated from her husband, Bryant became romantically involved with Henry Walk. She became pregnant during the relationship and, in September 1995, gave birth to a son, Dakota. Afterwards, Walk visited Bryant and Dakota in the hospital. According to Bryant, she asked Walk to sign Dakota's birth certificate, but he refused. Instead, Bryant's husband signed the birth certificate.
 {¶ 3} After Dakota's birth, Bryant and Walk continued their relationship. During this time, Walk remained involved in Dakota's life. Although he did not provide regular support for Dakota, Walk testified that he would often purchase diapers and other necessities when Bryant needed them. He also testified that he gave Bryant $500 at Christmas for Dakota. Bryant, however, testified that Walk did not provide financial assistance for her and Dakota.
 {¶ 4} During this time, Walk also investigated the possibility of establishing paternity. He and Bryant spoke to Dakota's pediatrician about having a DNA test performed, but Walk was unable to afford the cost of a test. Walk then sought assistance from the Lawrence County Child Support Enforcement Agency (CSEA). However, the CSEA was unwilling to assist him because of the presumption of paternity created by Bryant's marriage. When that failed, Walk began urging Bryant to file for child support, which would require a determination of paternity. Bryant, however, was unwilling to do so.
 {¶ 5} In 1999, when Dakota was four years old, Walk's relationship with Bryant ended. According to Walk, Bryant then terminated his contact with Dakota. In February 2001, Walk filed a complaint against Bryant, Bryant's husband, and the CSEA seeking to establish paternity. In January 2002, the magistrate ordered DNA testing. The test results indicated that Walk was Dakota's father.
 {¶ 6} After receiving the results of the DNA test, Walk filed motions for custody and visitation. Two months later, Bryant filed a motion for birthing expenses and past child support. Following a series of hearings, the court denied Walk's motion for custody but granted him visitation. In addition, the court granted Bryant's motion for birthing expenses and past child support. The court then ordered the CSEA to calculate the amount of past child support based on income figures contained in the court's entry. In February 2003, the CSEA presented its findings to the court. One month later, the court filed its entry ordering Walk to pay $23,881.65 in past child support and birthing expenses. After the trial court issued its findings of facts and conclusions of law, Walk appealed, raising the following assignments of error: "ASSIGNMENT OF ERROR NO. 1 — The trial court abused its discretion by ordering appellant to pay retroactive child support and birthing expenses and not accounting for appellant's support given, and attempts to initiate child support proceedings. ASSIGNMENT OF ERROR NO. 2 — The trial court abused its discretion in failing to apply the doctrine of waiver to bar appellee's motion for retroactive child support and birthing expenses. ASSIGNMENT OF ERROR NO. 3 — The trial court abused its discretion in failing to apply the doctrine of laches to bar appellee's motion for retroactive child support and birthing expenses. ASSIGNMENT OF ERROR NO. 4 — If the court finds that the trial court did not otherwise abuse its discretion in ordering arrearages and birthing expenses, appellant asserts that the trial court abused its discretion by not applying income information given by appellee at trial.ASSIGNMENT OF ERROR NO. 5 — If the court finds that the trial court did not otherwise abuse its discretion in ordering arrearages and birthing expenses, appellant argues that the trial court abused its discretion by ordering an incorrect amount for birthing expenses."
 {¶ 7} Because Walk's first three assignments of error challenge the propriety of the court's award of birthing expenses and retroactive child support, we will address them together.
 {¶ 8} When reviewing matters related to child support, we apply an abuse of discretion standard. Booth v. Booth (1989),44 Ohio St.3d 142, 144, 541 N.E.2d 1028. An abuse of discretion consists of more than error of judgment; it connotes an attitude on the part of the court that is unreasonable, unconscionable, or arbitrary. State v. Lessin, 67 Ohio St.3d 487, 494,1993-Ohio-52, 620 N.E.2d 72; Rock v. Cabral (1993),67 Ohio St.3d 108, 112, 616 N.E.2d 218. When applying the abuse of discretion standard of review, we are not free to merely substitute our judgment for that of the trial court. In re JaneDoe 1 (1991), 57 Ohio St.3d 135, 137-38, 566 N.E.2d 1181, citingBerk v. Matthews (1990), 53 Ohio St.3d 161, 169,559 N.E.2d 1301.
 {¶ 9} R.C. 3111.13 details the relief available once a party establishes paternity. Sexton v. Conley, Scioto App. No. 01CA2823, 2002-Ohio-6346, at ¶ 9. Under R.C. 3111.13(C), the judgment or order may include "any other provision directed against the appropriate party to the proceeding, concerning the duty of support, the payment of all or any part of the reasonable expenses of the mother's pregnancy and confinement, the furnishing of bond or other security for the payment of the judgment, or any other matter in the best interest of the child." When awarding child support under this section, a trial court may establish not only a current support amount, but may also award retroactive child support. See Park v. Ambrose (1993),85 Ohio App.3d 179, 184, 619 N.E.2d 469; Sexton, supra. See, also,Nwabara v. Willacy (1999), 135 Ohio App.3d 120, 138,733 N.E.2d 267; Beach v. Poole (1996), 111 Ohio App.3d 710, 712,676 N.E.2d 1254. In deciding whether to award retroactive child support, the court must "consider all relevant factors, including, but not limited to, any monetary contributions either parent of the child made to the support of the child prior to the court * * * order * * * for * * * current support * * * (.)" R.C.3111.13(F)(2).
 {¶ 10} In his second and third assignments of error, Walk contends the court erred in failing to apply the doctrines of laches and waiver to bar Bryant's claim. Neither the court's entry nor its findings of facts and conclusions of law specifically address Walk's arguments regarding laches and waiver. However, the court's award of birthing expenses and retroactive child support is an implicit rejection of these arguments.
 {¶ 11} Equitable defenses such as laches and waiver are applicable in paternity actions. See Wright v. Oliver (1988),35 Ohio St.3d 10, 517 N.E.2d 883, syllabus; Park,85 Ohio App.3d at 184. We review a court's decision regarding the application of laches and waiver under an abuse of discretion standard. See, e.g., Bahner's Auto Parts v. Bahner (July 23, 1998), Scioto App. No. 97CA2538.
 {¶ 12} Laches is "an omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party." Connin v. Bailey (1984),15 Ohio St.3d 34, 35, 472 N.E.2d 328, quoting Smith v. Smith
(1959), 168 Ohio St. 447, 156 N.E.2d 113. Delay in asserting a right does not of itself constitute laches. Smith,168 Ohio St. 447, paragraph three of the syllabus. Rather, the person for whose benefit the doctrine will operate must show that he or she has been materially prejudiced by the delay. Id.
 {¶ 13} Walk has failed to show that he was materially prejudiced by Bryant's delay in asserting her claim. Walk argues that he was materially prejudiced because he does not have records to verify the support he previously provided for Dakota. However, by Walk's own admission, he did not keep records of the support he provided. Thus, any prejudice he suffered resulted not from Bryant's delay, but from his own failure to maintain records. Even if Bryant had brought her claim earlier, Walk still would have been unable to produce records evidencing the support he provided.
 {¶ 14} Walk also relies on our decision in Park v. Ambrose,85 Ohio App.3d 179, to support his laches argument. However,Park is easily distinguishable from this case. In Park, the mother and daughter waited until twenty years after the daughter's birth before attempting to determine paternity and establish retroactive child support. The mother had not wanted the father to have any part in raising the daughter and had neither requested child support nor established visitation between the father and his daughter. Complying with the mother's request, the father had made no attempt to contact either the mother or the daughter. In concluding that laches barred the mother's claim for retroactive child support, we found that the father was materially prejudiced because he received no benefit from being a father during his daughter's formative years. We noted that while R.C. 3111.13 permits the trial court to award retroactive child support, it cannot rewrite the past. We concluded: "Although there are child support arrearages, there are no `visitation' or `custody' arrearages after the child has grown to adulthood." Id. at 184.
 {¶ 15} Here, we are not dealing with a claim brought after the child reached adulthood. Rather, Dakota was six years old when Bryant filed her motion for birthing expenses and retroactive child support. Moreover, Walk remained involved in Dakota's life until the child was four years old. Nothing Bryant did prevented Walk from filing his paternity action sooner than he chose to do it. Thus, the present situation does not resemble that of Park, where the father was deprived of the opportunity to establish a relationship with his daughter during her formative years. Because Walk failed to show that he was materially prejudiced by the delay, the court did not abuse its discretion in determining that Bryant's claim was not barred by the doctrine of laches.
 {¶ 16} Waiver is the voluntary surrender or relinquishment of a known right or intentionally doing an act inconsistent with an assertion of that right. Marfield v. Cincinnati, D T TractionCo. (1924), 111 Ohio St. 139, 145, 144 N.E. 689. "In the former case it amounts to an agreement and must be supported by a consideration which may be either a benefit to the promisor or a disadvantage to the promisee. In the latter case, it may be accomplished by acts or conduct and there may be an estoppel from insisting upon the right claimed to have been relinquished, in which event no consideration is necessary." Id.
 {¶ 17} Here, Walk does not claim that Bryant's waiver arose by virtue of an agreement. Rather, he claims that Bryant, through her acts and conduct, expressed an intention inconsistent with an assertion of her right to child support. During the hearing, Bryant admitted that she never asked Walk for child support. While Bryant may have been less than diligent in pursuing her claim for child support, her lack of diligence is not inconsistent with an assertion of her right to child support. SeeGoff v. Walters (Oct. 28, 1998), Summit App. No. 18981. Thus, the trial court did not abuse its discretion in determining that Bryant's claim was not barred by the doctrine of waiver.
 {¶ 18} In his first assignment of error, Walk contends the court erred in awarding retroactive child support despite evidence that he provided support for Dakota and attempted to establish paternity. As noted above, R.C. 3111.13(F)(2) requires the court to "consider all relevant factors" when determining whether to require a parent to pay retroactive child support.
 {¶ 19} The court found that Bryant had informed Walk that he might be Dakota's father. It also found that Walk had reason to know he might have been Dakota's father since he and Bryant were dating and spending the night together before Dakota's birth. In its entry, the court noted that Walk had attempted to initiate paternity proceedings when Dakota was young. The court also noted that until Dakota was four, Walk maintained an involvement in Dakota's life as Dakota's father. Finally, the court found that Walk had not paid child support throughout Dakota's lifetime. Faced with those facts, the court ordered Walk to pay retroactive child support. Having considered the record, we cannot say that the court's decision is unreasonable, unconscionable, or arbitrary.
 {¶ 20} As the court noted, Walk established a father-child relationship with Dakota during Dakota's first four years of life, despite Walk's doubts about Dakota's paternity. During that time, Walk had the benefit of contact with his son. At no time, however, did he provide regular support for his son's needs. Moreover, the support Walk did provide was minimal at best. Walk testified: "If [Bryant] needed money for diapers of something I'd give it to her." However, he also testified that Bryant did not normally ask him for money. Thus, it does not appear that Walk supplied diapers and other necessities on a regular basis. Walk testified that he gave Bryant $500 at Christmas for Dakota, a claim which Bryant denies. However, even if Walk did give Bryant $500 at Christmas, this does not make up for his lack of support throughout the rest of the year. Given the evidence, we cannot say the court abused its discretion in ordering Walk to pay retroactive child support. It appears the court considered the facts of the case and concluded that an award of retroactive child support was appropriate. We cannot say that this conclusion is unreasonable, unconscionable, or arbitrary. Accordingly, Walk's first three assignments of error have no merit.
 {¶ 21} In his fourth assignment of error, Walk challenges the amount of the court's award. He contends the court used incorrect income figures to calculate the amount of past child support. We agree.
 {¶ 22} After granting Bryant's motion for birthing expenses and retroactive child support, the court ordered the CSEA to calculate the amount of past child support Walk owed. In its entry, the court supplied the income figures to be used in calculating the award. The entry indicated that Bryant's income from September 1995 through January 1, 2001 was to be based upon minimum wage. After January 1, 2001, it was to be based on her earnings of $600 every two weeks.
 {¶ 23} During the hearing, Bryant testified regarding her past employment. In addition, Walk introduced into evidence Bryant's employment application for her current job, which contained a listing of her former employers. According to Bryant, she worked at Plaza 52 until 1999. She testified that she earned $3.00 per hour while working there. On the employment application, however, Bryant indicated that she earned $6.00 an hour while working at Plaza 52. After leaving Plaza 52, Bryant worked at Ironton Iron. According to Bryant, she worked there for eight or nine months earning $12.50 per hour. Bryant testified that after leaving Ironton Iron, she worked at Buckeye Steel for approximately eight months in 2000. She testified that she earned $15.50 per hour while working there, although she indicated on the employment application that she only made $12.22 per hour. After leaving Buckeye Steel, Bryant went to work for the Waffle House, where she is currently employed.
 {¶ 24} While Bryant's past wages are not entirely clear from the record, it is clear that she earned more than minimum wage during a portion of the time between September 1995 and January 1, 2001. According to her own testimony, she earned $12.50 per hour while working at Ironton Iron and $15.50 per hour while working at Buckeye Steel. Thus, the court abused its discretion in using minimum wage as Bryant's income figure for the entire period between September 1995 and January 1, 2001. Accordingly, Walk's fourth assignment of error has merit. On remand, the court should calculate the amount of retroactive child support using Bryant's actual income figures, rather than minimum wage. If necessary, the court should hold an evidentiary hearing to determine the correct wage amounts and the period of time Bryant received a particular wage.
 {¶ 25} In his fifth assignment of error, Walk challenges the amount of the court's award for birthing expenses.
 {¶ 26} At the hearing, Bryant provided a billing statement from Dr. Glenn Haeberle's office indicating an original charge of $1,500 for "vaginal delivery only" on September 9, 1995. The statement also indicated that the balance "Now Due" as of August 1, 2002 was $1,500. However, she testified that the credit bureau indicated that the balance, including interest and late fees, was $2,348. In its entry, the court determined that Walk should be responsible for one-half of the birthing expenses, interest, and late fees. Therefore, it ordered him to pay one-half of the $2,348 in past due birthing expenses.
 {¶ 27} Bryant offered no documentary evidence to prove the amount of the debt as reflected by the credit bureau. Moreover, the documentary evidence she did offer was not consistent with her testimony that the debt was $2,348. At the hearing, Bryant herself offered into evidence the billing statement from Dr. Glenn Haeberle's office. That statement was dated August 1, 2002, only one month before the second day of the hearing. The statement indicated that Bryant only owed $1,500 as of that date and that the original charge had been for a like amount. Because the appellant herself was the source of the inconsistency, we conclude the court abused its discretion in relying on her unsupported oral contention that the balance was $2,348 when documentary evidence indicated otherwise. Thus, the court erred when it ordered Walk to pay one-half of $2,348. Accordingly, Walk's fifth assignment of error has merit.
 {¶ 28} We are mindful that R.C. 3111.13(C) permits the court to order payment of "all or any part of the reasonable expenses of the mother's pregnancy and confinement." Thus, we remand this matter so the court may determine Walk's obligation based on the $1,500 figure contained in Dr. Haeberle's billing statement.
Judgment affirmed in part, reversed in part, and cause remanded.