DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Jessica Barker ("Mother"), appeals from the judgment of the Lorain County Court of Common Pleas that denied her request for retroactive child support. This Court affirms.
 I. {¶ 2} Mother and Appellee, Forrest Jarrell ("Father"), had a sexual relationship in 1987. In mid-1987, Mother became pregnant. Mother informed Father of this pregnancy, Father offered to marry Mother, and Mother declined. Later, the two discussed the possibility of an abortion. Ultimately, Mother decided to have the child and gave birth to a baby girl on March 29, 1988. Mother *Page 2 
and Father, however, did not remain in contact. Mother testified that she called Father on Father's Day in 1988 to discuss the child's well-being, but the two did not communicate after that date. Mother indicated that her parents would have removed her from their home if she stayed in contact with Father.
 {¶ 3} On September 23, 2005, Mother filed a complaint seeking to establish paternity of the child and requesting retroactive child support from Father. The matter was heard before a magistrate on October 23, 2006 and December 8, 2006. On December 29, 2006, the magistrate issued her decision. In her decision, the magistrate rejected Father's defense of laches and ordered him to pay support retroactive to the date of the child's birth. Both parties objected to the magistrate's decision. On February 16, 2007, the trial court sustained Father's objections, finding that Mother's claim for retroactive support was barred by the doctrine of laches. Mother timely appealed the trial court's judgment, raising three assignments of error for review. For ease of analysis, we have consolidated Mother's first and second assignments of error.
 II. ASSIGNMENT OF ERROR I "THE TRIAL COURT ERRED IN APPLYING THE LACHES DOCTRINE WHEN IT HAD NOT BEEN AFFIRMATIVELY PLED."
 ASSIGNMENT OF ERROR II *Page 3 "THE TRIAL COURT ERRED IN APPLYING THE LACHES DOCTRINE WHEN THERE HAD BEEN NO MATERIAL PREJUDICE."
 {¶ 4} In her first assignment of error, Mother asserts that Father failed to plead the doctrine of laches in his answer. In her second assignment of error, Mother contends that the trial court erred in determining that Father had demonstrated the elements of laches. This Court disagrees.
 {¶ 5} "Laches is an omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party." Baughman v. State Farm Mut. Auto. Ins. Co.,160 Ohio App.3d 642, 2005-Ohio-1948, at ¶ 10. To succeed utilizing the doctrine of laches, one must establish: "(1) unreasonable delay or lapse of time in asserting a right; (2) absence of an excuse for such delay; (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party." Connolly Constr. Co. v. Yoder, 3d Dist. No. 14-04-39, 2005-Ohio-4624, at ¶ 23, citing State ex rel. Cater v. N.Olmsted (1994), 69 Ohio St.3d 315, 325. Accordingly, "[d]elay in asserting a right does not of itself constitute laches." State ex rel.Scioto Cty. Child Support Enforcement Agency v. Gardner (1996),113 Ohio App.3d 46, 57, quoting Smith v. Smith (1959), 168 Ohio St. 447, at paragraph three of the syllabus. Instead, the proponent must demonstrate that he or she has been materially prejudiced by the unreasonable and unexplained delay of the person asserting the claim. Connin v.Bailey (1984), 15 Ohio St.3d 34, 35-36. *Page 4 
Properly Plead {¶ 6} In his answer, under a heading labeled "Second Defense," Father stated as follows:
 "[Father] says that for seventeen (17) years following the birth [of the child, Mother] failed to take any action against [Father] on the matter which she now alleges in the complaint. * * * As a result of the seventeen (17) year delay in bringing] this action [Father] incurred substantial obligations which he would not have under taken but for the delay, thereby causing him to be materially prejudiced by the delay."
Consequently, as a defense, Father asserted that Mother waited an unreasonable time to file her complaint and that he was materially prejudiced. Father, therefore, alleged the elements of laches in his second defense. This Court, therefore, finds no error in the trial court's consideration of this defense.
Application {¶ 7} Whether or not to apply the defense of laches is within the discretion of the trial court and is not overturned absent an abuse of discretion. Still v. Hayman, 153 Ohio App.3d 487, 2003-Ohio-4113, at ¶ 8. The phrase "abuse of discretion" connotes more than an error of judgment; rather, it implies that the trial court's attitude was arbitrary, unreasonable, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, this court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd, (1993), 66 Ohio St.3d 619, 621. *Page 5 
 {¶ 8} With respect to laches in parentage actions, the Ohio Supreme Court has noted as follows:
 "[L]aches may be applicable in parentage actions filed prior to the expiration of the statute of limitations, but only if the defendant can show material prejudice. The unavailability of witnesses and incurrence of obligations do not materially prejudice the defendant on the facts of this case." Wright v. Oliver (1988), 35 Ohio St.3d 10, 12.
 {¶ 9} Mother is correct in her assertion that this Court has previously found that a father's inability to form a relationship with his child does not constitute material prejudice. See Abbe v.Bochert (Mar. 29, 2000), 9th Dist. No. 19637, citing Gardner,113 Ohio App.3d at 58-59; see, also Goff v. Walters (Oct. 28, 1998), 9th Dist. No. 18981. Laches, however, is an equitable doctrine and a court's equitable powers are "invoked to provide the flexibility necessary to moderate unjust results." (Quotations omitted.) N. Olmsted City SchoolDist. Bd. of Edn. v. Cleveland Mun. School Dist. Bd. of Edn.,108 Ohio St.3d 479, 2006-Ohio-1504, at ¶ 56 (Lundberg Stratton, J., dissenting). As a result, courts have noted that "bright lines" and "hard and fast" rules often do not accomplish equity. Longfellow v. Longfellow (Mar. 11, 1999), 5th Dist. No. 1998AP100111 (referring to the Supreme Court's decision in Berish v. Berish (1982), 69 Ohio St.2d 318). Consequently, this Court declines to find that our rulings in Abbe andWalters create a bright line rule. Rather, we find that Abbe andWalters, as decisions resting in equity, are confined to the facts presented in those matters. *Page 6 
 {¶ 10} Abbe and Walters are factually distinguishable from the case at bar. Abbe involved a liaison between an unmarried woman and a married man. The woman became pregnant and was on public assistance. She worked for a brief time before becoming injured. Ultimately, she lost her employment. The father of the child had sporadic contact with the child, was photographed with the child, received correspondence from the child, and wrote checks for support of the child on a sporadic basis. There is nothing in the facts of that case to indicate that the father was discouraged or prevented from having a relationship with the child. Likewise in Walters, the parties lived together and had two children together before the birth of the child at issue. After the child was born, the parties continued cohabitating for a period of time before they separated. After the mother remarried, the father continued in making some support payments for the child.
 {¶ 11} The facts detailed above are distinguishable from those in the case at bar. Unlike the fathers detailed above, Father herein actively sought involvement in his child's life. When Father learned of Mother's pregnancy, he expressed his desire to get married. He sought a relationship with the mother and the child, offering financial and familial support. In his testimony, Father stated as follows:
 "She told me that she was pregnant. I offered to marry her. I offered to get her an apartment. She said she didn't want anything to do with me. She didn't want me to have anything to do with the child. She said she didn't want to marry me, didn't want my money, she just wants me to stay away. So that's what I did." *Page 7 
Mother closed the door on those offers because she feared the wrath of her own mother if she maintained a relationship with Father. Even after she married another man, she discouraged a relationship with Father as she desired to raise the child to believe that her husband was its father. It was only after mother released custody of the child to the maternal grandmother as the child approached the age of emancipation that Mother sought support from Father. Consequently, we findAbbe and Walters inapplicable to this matter.
 {¶ 12} In support of its decision, the trial court relied uponPark v. Ambrose (1993), 85 Ohio App.3d 179 and Stephenson v. Potts (May 4, 1993), 10th Dist. No. 92AP-1644. In Park, the court applied laches relying on the following rationale:
 "Appellant has now been ordered to pay child support but received no benefit from being a father during his daughter's formative years. He had no right to visit her or spend time with her. Appellant was deprived of such an opportunity during his daughter's minority[.]" Park, 85 Ohio App.3d at 185.
In Park, the mother did not want the father to have any "part in raising their daughter." Id. at 184. The father abided by mother's desires and did not contact her or the child during the child's minority. Like the father in Park, Father abided by Mother's wishes and did not become involved in the child's life. We, therefore, find the Park Court's rationale persuasive.
 {¶ 13} In addition to the above facts, this Court is mindful that it was only after Mother released custody of the child to the maternal grandmother as the child *Page 8 
approached the age of emancipation that Mother sought support from Father. As the Park court noted,
 "The non-custodial parent is more than a mere money machine. Each parent can contribute to the well-being of a child, regardless of which one has custody. The prejudice to the custodial parent who receives no support is obvious. The prejudice to the non-custodial parent who is denied any input to the child's rearing is just as obvious." Id. at 185.
Mother no longer has custody of the child, but now seeks a lump sum payment of retroactive support. Permitting retroactive support under these facts would treat Father as nothing more than a money machine.
 {¶ 14} Additionally, Mother had the right to seek child support from Father at any time. She made a conscious and deliberate decision not to do so. It was not until Mother no longer had custody of the child and the child was nearly emancipated that Mother sought retroactive support. Through her actions, Mother effectively waived her right to seek child support. Id. at 184-85. Similar to Mother, Father had the right to seek visitation with the child at any time during the child's minority. He could have forced the issue and brought an action in court. By failing to take any action, Father waived his right to be involved in the child's upbringing. Id. If either Mother or Father had sought to enforce his or her rights when the child was young, the other parent would likely have countered by enforcing his or her reciprocal rights.
 {¶ 15} As noted above, laches is an equitable defense. In this case, Mother seeks to repudiate her waiver of child support. Due to Mother's delay in *Page 9 
repudiating her waiver and enforcing her rights, Father has no recourse. He no longer has the ability to repudiate his waiver. As thePark court noted, "[although there are child support arrearages, there are no `visitation' or `custody' arrearages after the child has grown to adulthood." Id. at 184. The Park court went on to describe the prejudice to the father as "patent" and "obvious." Id. at 184-85. Under these specific facts, this Court agrees with that conclusion.
 {¶ 16} Important to our conclusion is this Court's standard of review. We may reverse the trial court only upon a finding that the trial court's conclusion was arbitrary, unreasonable, or unconscionable. As detailed above, equity requires that the trial court be granted flexibility to achieve a just result. Herein, the trial court used its discretion and determined that equity favored Father in this matter. Based upon the facts presented at trial, we cannot say that such a decision was unreasonable, arbitary, or unconscionable. Consequently, we cannot say that the trial court abused its discretion in applying the doctrine of laches. Mother's first and second assignments of error are overruled.
 ASSIGNMENT OF ERROR III "THE TRIAL COURT ERRED IN DENYING RETRO-ACTIVE SUPPORT AND BY NOT CALCULATING THE SAME USING THE ANNUAL WAGE AMOUNTS."
 {¶ 17} In her final assignment of error, Mother asserts that the trial court should use different figures in calculating the amount of retroactive support. In response to Mother's first and second assignments of error, this Court determined *Page 10 
that the trial court did not err in denying her retroactive support. Mother's third assignment of error, therefore, is moot and we decline to address it. See App.R. 12(A)(1)(c).
 III. {¶ 18} Mother's first and second assignments of error are overruled, and Mother's third assignment of error is moot. The judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30. *Page 11 
Costs taxed to appellant.
MOORE, J. CONCURS