DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, Eugene Blakely, Jr., appeals his conviction for a single count of murder with a firearm specification, in violation of R.C. 2903.02(A) an R.C. 2941.145. For the conviction of murder, the trial court sentenced appellant to an indefinite term of 15 years to life. An additional mandatory term of three years for the firearm specification was ordered to run consecutively for a total term of incarceration of 18 years to life.
 {¶ 2} On this appeal as of right, appellant raises the following assignments of error:
 {¶ 3} "1. The trial court committed prejudicial error by denying Defendant's Motion to Suppress and permitting the testimony of a prior out-of-court identification by Nicole Gregory.
 {¶ 4} "2. The trial court committed prejudicial error by permitting the prior testimony of witness Camille Crawford to be admitted as evidence."
 {¶ 5} As to appellant's first assignment of error, the suppression hearings and trial testimony provided the following relevant facts. On August 29, 2002, at approximately 3:15 a.m., the victim, Willie McMillan, was sitting in the driver's seat of his vehicle, along with three passengers whom he had picked up while they were hitchhiking earlier in the evening. The group had just exited an apartment complex, the Weiler Homes, and the vehicle was parked in front of an apartment building. Nicole Gregory, the witness whose identification of appellant is at issue, was sitting in the right rear seat, behind the front passenger seat. Beth Slaughterbeck, one of Gregory's companions, was sitting in the front passenger seat. As the group was sitting in the car, and as McMillan had the vehicle in reverse but not in motion, a man approached the vehicle from the right side, crossed in front of the vehicle, approached the driver's side, and shot McMillan through the driver's side window.
 {¶ 6} Immediately after he was shot, McMillan began to back the car out of the lot. Before the car could travel the length of the street, he "slumped over" the steering wheel, having lost consciousness, the car crashed into a building, and Gregory and the other two passengers fled the vehicle. Gregory and Slaughterbeck ran to a house, pounded on the door, but then ran the quarter mile to Slaughterbeck's house, where they made two 9-1-1 calls. McMillan later died.
 {¶ 7} During the police investigation that early morning and into the day, Gregory told police that she could not identify the shooter, and described the shooter simply as a black male with very short hair. One day after the shooting, Slaughterbeck identified appellant from a photo array, and she subsequently testified at appellant's first trial. Gregory was not contacted to testify at appellant's first trial, nor did she attempt to contact the police or detectives before the trial. Appellant's first trial was declared a mistrial.
 {¶ 8} Approximately one year after the mistrial, Detective Quinn obtained Gregory's phone number after she had contacted the prosecutor and wished to cooperate. Quinn contacted Gregory and asked to interview her at the station regarding McMillan's murder. Gregory appeared at the station, and she was asked to look at a photo array. The photo array was placed face down on a desk, and Gregory was told that the array may or may not contain a photo of the shooter. When the array was flipped over, Gregory identified appellant "within seconds," according to her own and Quinn's testimony. She was then interviewed further.
 {¶ 9} Appellant moved to suppress Gregory's identification from the photo array and any subsequent in-court identification. At the suppression hearing, Gregory testified that she had initially lied to the police the night of the crime when she told them that she was unable to identify the shooter. However, Gregory was unable, either at the station interview or at the suppression hearing, to describe the shooter in any more detail than she had originally.[1] Specifically, Gregory testified that the shooter was a black male, approximately six feet tall, approximately 200 pounds, and wearing all white or light gray clothing; she could not testify to any distinguishing features of the shooter.
 {¶ 10} The trial court denied appellant's motion to suppress the identification, finding nothing in the photo array itself or the procedure employed to be suggestive. The court also stated that any questions regarding whether Gregory sufficiently saw the shooter and her sparse initial and subsequent descriptions would be matters of credibility to be weighed by the finders of fact. One week later, Gregory testified at appellant's second trial to the crime and to her photo identification, and she made an in-court identification of appellant as the perpetrator.
 {¶ 11} Appellant argues that the trial court abused its discretion by denying his motion to dismiss Gregory's out of court identification through the photo array. First, renewing an argument from the suppression hearing, appellant argues that the lapse of one year between the event and the identification engenders a high likelihood of misidentification. Second, appellant argues that Gregory had not viewed the shooter for a sufficient length of time, and was unable to describe him in sufficient detail, to be able to identify him one year later.
 {¶ 12} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. State v. Davis
(1999), 133 Ohio App.3d 114. When considering a motion to suppress, the trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of a witness. State v.Smith (1997), 80 Ohio St.3d 89, 105; State v. Fanning (1982),1 Ohio St.3d 19, 20. Accordingly, this court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Rhude (1993),91 Ohio App.3d 623, 626; State v. Guysinger (1993), 86 Ohio App.3d 592,594.
 {¶ 13} Due process requires suppression of an out of court identification if the confrontation procedure was "unnecessarily suggestive of the suspect's guilt and the identification was unreliable under all the circumstances." State v. Davis (1996),76 Ohio St.3d 107, 112, citing State v. Waddy (1992),63 Ohio St.3d 424, 438; Manson v. Brathwaite (1977), 432 U.S. 98, 116;Neil v. Biggers (1972), 409 U.S. 188, 196-198. Suppression is warranted where the confrontation procedure employed and the unreliability of the witness' identification gives rise to a "substantial likelihood of irreparable misidentification."Simmons v. United States (1968), 390 U.S. 377, 384. No due process violation occurs when an identification was not tainted by a suggestive confrontation procedure, but is "instead the result of observations at the time of the crime." State v.Davis, 76 Ohio St.3d at 112, citing Coleman v. Alabama (1970),399 U.S. 1, 5-6. Additionally, if an out-of-court identification procedure is unnecessarily suggestive, the in-court identification could be suppressed as violative of due process if it is "tainted" by the out-of-court identification. Stovall v.Denno (1967), 388 U.S. 293 (overruled on other grounds byGriffith v. Kentucky (1988), 179 U.S. 314).
 {¶ 14} Even if the out-of-court confrontation procedure was unduly suggestive, however, the identification does not violate due process and is therefore admissible if the identification is reliable given the "totality of the circumstances." State v.Moody (1978), 55 Ohio St.2d 64, 67. The factors to be considered under the totality of the circumstances, to determine an identification's reliability, articulated in Neil v. Biggers,
"include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Biggers, 409 U.S. at 199-200.
 {¶ 15} Thus, reliability is, alone, a sufficient condition in order for an out-of-court identification to be admissible. Indeed, the prevailing concern of the Supreme Court is "that the jury not hear eyewitness testimony unless that evidence has aspects of reliability." Manson v. Brathwaite (1977)432 U.S. 98, 112.
 {¶ 16} Here, appellant does not take issue with whether the confrontation procedure itself was unduly suggestive; appellant focuses upon the reliability of Gordon's identification. Upon our review of the photographic display, we agree with appellee that it is not unduly suggestive. Appellant is depicted along with five other men, all approximately the same age, with the same skin tone and hair. Appellant's photograph has no distinguishing features which would make it stand out from the other photos. As appellant has argued the matter, the only question remaining is whether application of Biggers' reliability factors is required when the confrontation procedure is not unduly suggestive.
 {¶ 17} Ohio appellate courts have held that where the confrontation procedure is not unduly suggestive, the due process analysis ends and no further inquiry into reliability is required. State v. Armstrong, 11th Dist. Nos. 2001-T-0120, 2002-T-0071, 2004-Ohio-5635; State v. Taylor, 1st Dist. No. C-020475, 2004-Ohio-1494. The underlying rationale must be that, where the confrontation procedure is not suggestive, any doubts as to the witness' reliability should dissipate. Contrarily, inState v. Marbury, 10th Dist. No. 03AP-233, 2004-Ohio-3373, where the defendant argued on appeal that the identification was unreliable although the confrontation procedure was not suggestive, the court did proceed to conduct a Biggers
analysis of the overall reliability of the identification. This court has taken both approaches. See State v. Castilleja (May 31, 1996), 6th Dist. No. L-95-049; State v. Williams (Mar. 20, 1998), 6th Dist. No. L-96-353.
 {¶ 18} At the suppression hearing, the trial court held that since the confrontation procedure was not suggestive, indicia of the reliability of Gordon's identification were matters going to her credibility and were best left to a jury's determination. This approach accords with the philosophy expressed in dicta byManson, wherein the Court noted: "It is part of our adversary system that we accept at trial much evidence that has strong elements of untrustworthiness * * *. Counsel can both cross-examine the identification witnesses and argue in summation as to factors causing doubts as to the accuracy of the identification * * *." Manson v. Brathwaite, 432 U.S. at 113. "Evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature." Id. at 116. Given this, we must conclude that, since the reliability prong is alone sufficient for admissibility where suggestiveness exists, reliability need not be determined in a suppression hearing when the court finds that the confrontation procedure is not suggestive; that is, where suggestiveness does not exist, a reliability determination is not necessary.
 {¶ 19} In sum, despite the indicia of unreliability surrounding the circumstances of Gordon's witnessing of the crime (the year lapse between the crime and the identification; her prior inability or unwillingness to identify or describe the shooter; the fleeting seconds in which she viewed the shooter; the lack of any additional details Gordon gave in her subsequent identification), the admission of her identification based upon the non-suggestive procedure was not error. She identified appellant from the photo array within seconds, she was subject to cross-examination by appellant, and the jury could weigh the aforementioned circumstances surrounding her identification. To express the conclusion in terms of the underlying rationale, the reliability of the identification procedure employed dispels the necessity of proceeding to a Biggers analysis as to whether the circumstances of her identification were reliable, and any remaining doubts as to those circumstances were properly left for a jury's determination.
 {¶ 20} Moreover, even if we held that admission of the identification was error, the error was harmless. Upon review of the record, there was sufficient evidence for a jury to find appellant guilty beyond a reasonable doubt; most relevantly, Slaughterbeck's identification of appellant and her testimony correlated with the facts Gordon was able to provide. For those reasons, appellant's first assignment of error is not well-taken.
 {¶ 21} Appellant next argues that admission of the prior testimony of Camille Crawford was error. Crawford's admitted testimony contained the following facts: Crawford had been an acquaintance of appellant for several months when, on the night of August 29, 2002, at approximately 2:55 a.m., she called appellant to pick her up for a ride. He did so shortly after her call, and together they drove to the Weiler Homes. Crawford testified that appellant then left her alone for approximately three to four minutes; during those minutes, she heard five or six gunshots. Shortly after the gunshots, appellant ran back to where Crawford was sitting outside a Weiler Homes building. She said appellant had a silver gun in his hand, and was repeating, "come on, let's go, let's go, we got to go." Crawford then left with appellant in his car, and appellant took her to her home, dropped her off, then returned after approximately an hour. When he returned, he told Crawford that he had killed McMillan, because he "owed him" — for what, Crawford was unsure. A few days later, appellant telephoned Crawford and told her that he was in Chicago. Crawford contacted police approximately one week after the shooting.
 {¶ 22} Crawford testified at appellant's first trial. Attempts were made to secure Crawford as a witness before the instant trial; this trial date was postponed once, in part, upon her failure to appear despite service of a warrant. After the postponement, another subpoena was issued for her appearance, and also a material witness warrant. Ultimately, Crawford failed to appear to testify at this trial. The prosecution moved to admit Crawford's prior trial testimony into evidence, and appellant objected to it on hearsay grounds and as violative of his right to confrontation. After some discussion at the bench and in chambers, the trial court found Crawford unavailable as a witness, and allowed the prosecution to read aloud a transcript of Crawford's testimony from appellant's first trial, expressly pursuant to the hearsay exception of Evid.R. 804(B)(1) allowing prior testimony of an unavailable witness.
 {¶ 23} As a preliminary matter, we note that the trial court correctly ruled, as required by Evid.R. 804(B)(1), that appellant had a "similar motive" to develop Crawford's testimony by cross-examination, as Crawford's testimony was offered in the instant matter for the same purpose as the first trial. SeeState v. Howard, 2nd Dist. No. 19413, 2003-Ohio-3235 (discussing and assessing the "similar motive" requirement), citing State v. Madison (1980), 64 Ohio St.2d 322. Appellant only contents whether Crawford was properly deemed "unavailable" for confrontation pursuant to the Sixth Amendment; we also examine whether her testimony was admitted as required by Evid.R. 804.
 {¶ 24} The Confrontation Clause of the Sixth Amendment to the United States Constitution provides criminal defendants with the right to be confronted with adverse witnesses. The Ohio Supreme Court has held that a two-part test determines whether admitting hearsay testimony of an unavailable witness violates the criminal defendant's right of confrontation. State v. Smith (1990),49 Ohio St.3d 137, 144. First, the witness whose testimony is offered must be unavailable; a witness is not considered unavailable "unless the prosecution had made reasonable efforts in good faith to secure his presence at trial." Id, citing Statev. Keairns (1984), 9 Ohio St.3d 228, 230. The second part of the test requires the proffered statement to "bear sufficient indicia of reliability." Id., citing Ohio v. Roberts (1980),448 U.S. 56.[2]
 {¶ 25} Evid.R. 804(B)(1), pursuant to which Crawford's testimony was admitted in the instant case, is not coextensive with the Confrontation Clause. "Testimony given at a preliminary hearing must satisfy the right to confrontation and exhibit indicia of reliability." Id.; see, also, State v. Issa (2001),93 Ohio St.3d 49, 60, citing Idaho v. Wright (1990),497 U.S. 805, 814. Thus, unlike the right to confrontation, the hearsay rule does require a reliability determination.
 {¶ 26} Prior trial testimony, as Crawford's prior testimony in appellant's first trial, has been held to "clearly meet" the requirement of reliability. State v. Keairns, supra at 230, citing Ohio v. Roberts.[3] Thus, the reliability element of Evid.R. 804 is satisfied, and no analysis pursuant toCrawford, see discussion, supra, is required. Both parties focus their arguments upon whether the prosecution sustained its burden of proving that Crawford was unavailable.
 {¶ 27} Evid.R. 804(A) defines "unavailability," State v.Keairns, supra, at paragraph two of the syllabus:
 {¶ 28} "(A) Definition of unavailability: "`Unavailability as a witness' includes any of the following situations in which the declarant:
 {¶ 29} "* * *
 {¶ 30} "(5) is absent from the hearing and the proponent of the declarant's statement has been unable to procure the declarant's attendance (or in the case of a hearsay exception under division (B)(2), (3), or (4) of this rule, the declarant's attendance or testimony) by process or other reasonable means." Evid.R. 804(A)(5).
 {¶ 31} Also at issue in Keairns was how the prosecution must carry its burden to demonstrate unavailability. Even in cases where prior cross-examination of the declarant by the criminal defendant has occurred, as in prior trial testimony, the prosecution must still demonstrate unavailability pursuant to the evidence rule. Keairns, supra at 231, citing Ohio v. Roberts
(1980), 448 U.S. 56.[4] "A showing of unavailability under Evid.R. 804 must be based on testimony of witnesses rather than hearsay not under oath unless unavailability is conceded by the party against whom the statement is being offered." State v.Keairns, supra, at paragraph three of the syllabus. The only requirement for unavailability, however, is that the prosecution has attempted to use process or has made other "reasonable efforts in good faith." See State v. Young (1984),20 Ohio App.3d 269, 271, discussing Ohio v. Roberts, supra; State v.Bragg (1981), 2 Ohio App.3d 193, 195, concluding that "[s]everal efforts to subpoena a witness at different addresses is indicative that the proponent of the witness' testimony has been unable to secure attendance of the witness by process."
 {¶ 32} Appellant did not concede Crawford's unavailability and properly entered a continuing objection to the reading of her prior testimony. Therefore, we must determine whether the prosecution demonstrated a reasonable good faith effort to secure her presence, without the use of hearsay not under oath as required by Smith and Keairns.
 {¶ 33} Three subpoenas were issued, dated as follows: (1) served July 7, 2003, to appear July 8, 2003; (2) served August 4, 2003, to appear August 18, 2003; (3) served August 20, 2003, to appear August 25, 2003. A material witness warrant for Crawford was requested and issued on August 20. Appellant argues that because the subpoenas were issued to Detective Quinn, instead of to Crawford directly, and because the state failed to serve either the August 25 trial subpoena or the material witness warrant upon her, the state failed to act "with diligence" to secure her attendance. We find this argument without merit.
 {¶ 34} Quinn testified, under oath, that he had served the subpoena issued August 4 upon Crawford, and had spoken to her, and she had promised to attend the August 18 trial. However, she did not attend, and the trial was continued to August 25. Quinn then testified that he was unable to serve that subpoena upon Crawford, despite repeated visits to her residence; during that time, he spoke to her twice by telephone, and she had verbally promised to testify at the August 25 trial. On August 20, notified of Quinn's unsuccessful efforts to locate Crawford, the prosecutor requested the court to issue a material witness warrant to secure Crawford's attendance, and said warrant was in fact issued that same day. Quinn testified that he repeatedly attempted to serve that warrant and was unsuccessful in locating Crawford. He and other detectives also attempted to locate Crawford at places other than her residence, such as hospitals and the coroner's office, and also contacted Crawford's known acquaintances during their search.
 {¶ 35} "Several efforts to subpoena a witness at different addresses is [sic] indicative that the proponent of the witness' testimony has been unable to secure attendance of the witness by process." State v. Bragg (1981), 2 Ohio App.3d at 195. Likewise, the state's efforts to locate Crawford, to which Detective Quinn testified, constituted "reasonable means" other than process. See, e.g., State v. Carpenter (1997),122 Ohio App.3d 16, 25; State v. Madison, 64 Ohio St.2d at 328 (also searching hospitals and morgues). Thus, admission of Crawford's prior trial testimony neither violated appellant's right of confrontation nor was in error pursuant to Evid.R. 804. Appellant's second assignment of error is not, therefore, well-taken.
 {¶ 36} For the foregoing reasons, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
Pietrykowski, J., Skow, J., Parish, J., concur.
[1] Appellant did not attend the suppression hearing, but was represented by counsel.
[2] Crawford v. Washington (2004), 541 U.S. 36, abrogatedOhio v. Roberts by holding that out-of-court statements by witnesses that are testimonial are barred, under the Confrontation Clause, unless witnesses are unavailable and defendants had prior opportunity to cross-examine witnesses, regardless of whether such statements are deemed reliable by court. Crawford contained strong words of condemnation for the "reliability" test of Ohio v. Roberts. It would thus appear to negate the reliability prong of the Smith test. The Ohio Supreme Court has yet to clarify what impact, if any, Crawford
has on the Smith test. Clearly, reliability need no longer be determined as a prerequisite for admissibility to pass muster for the federal right of confrontation. The majority in Crawford
adamantly stated that, "[w]here testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." Crawford v. Washington (2004), 541 U.S. 36,68. Because, pursuant to Crawford, only testimonial evidence triggers the Confrontation Clause, no examination of reliability is required of testimonial evidence — either the witness is unavailable or she is not. "Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." Id. at 69. There is no question here that Crawford's prior testimony is testimonial. "Whatever else the term ["testimonial"] covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." Id. "Non-testimonial statements, however, continue to be governed by evidence rules on hearsay and by the U.S. Supreme Court's decision in Ohio v.Roberts." State v. Cook (2005), 6th Dist. No. WD-04-029,2005-Ohio-1550. (Internal citations omitted.) Here, Crawford's testimony is clearly testimonial and subject to Crawford's rule.
[3] Again, the inference of reliability of prior trial testimony was part of the driving force behind the rationale inCrawford — in addition to the desire to eliminate the subjective nature of judicial "reliability" tests.
[4] Crawford does not overrule Roberts on this point; therefore, Keairns' rule — that Ohio Evid.R. 804 applies to determine whether a witness is "unavailable" for Confrontation Clause purposes and the Ohio Rules of Evidence — still applies.