DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Scioto County Common Pleas Court judgment of conviction and sentence. A jury found Robert L. Bennett, defendant below and appellant herein, guilty of murder in violation of R.C. 2903.02(B).
 {¶ 2} Appellant assigns the following errors for review and determination:
FIRST ASSIGNMENT OF ERROR:
"THE TRIAL COURT FAILED TO EXCLUDE HEARSAY STATEMENTS ATTRIBUTED TO THE DEFENDANT'S TWO YEAR OLD DAUGHTER UNDER EVIDENCE RULE 601(A)."
SECOND ASSIGNMENT OF ERROR:
"THE TRIAL COURT IMPROPERLY ADMITTED MULTIPLE CONFLICTING HEARSAY STATEMENTS ATTRIBUTED TO THE DEFENDANT'S TWO YEAR OLD DAUGHTER AS EXCITED UTTERANCES UNDER EVIDENCE RULE 803(2)."
THIRD ASSIGNMENT OF ERROR:
"THE TRIAL COURT INSTRUCTIONS PERMITTED THE JURY TO MAKE A SERIES OF IMPROPER INFERENCES ABOUT THE PROOF REQUIRED TO ESTABLISH THE ELEMENTS OF THE OFFENSE OF MURDER."
FOURTH ASSIGNMENT OF ERROR:
"THE TRIAL COURT FAILED TO EXCLUDE THE TESTIMONY OF THE DEFENDANT'S BROTHER AS PLAIN ERROR UNDER RC 2317.01, EVIDENCE RULE 103(D) AND CRIMINAL RULE 52(B)."
FIFTH ASSIGNMENT OF ERROR:
"THE TRIAL COURT FAILED TO EXCLUDE AN ALLEGED PRIOR UNRECORDED ORAL STATEMENT BY DEFENDANT TO HIS BROTHER WHICH THE STATE WITHELD IN DISCOVERY UNDER EVIDENCE RULE 403(A) DUE TO THE PROSECUTION'S WILLFUL VIOLATION OF CRIMINAL RULE 16(E)(B)(3)."
SIXTH ASSIGNMENT OF ERROR:
"THE TRIAL COURT FAILED TO ADEQUATELY CIRCUMSCRIBE OR REMEDY THE PREJUDICE TO DEFENDANT CAUSED BY THE STATE'S WITHOLDING MEDICAL AND AUTOPSY RECORDS UNTIL TRIAL. THE TESTIMONY OF DR. JAMES S. WAGENAAR, DR. ONSY AYAD AND DR. COLLEY TRENT, AND THE RECORDS REFERENCED IN THEIR TESTIMONY SHOULD HAVE BEEN EXCLUDED. THEIR ADMISSION DEPRIVED DEFENDANT OF SUBSTANTIVE RIGHTS UNDER CRIMINAL RULE 16(E), CRIMINAL RULE 52(B) AND EVIDENCE RULE 103(D)."
SEVENTH ASSIGNMENT OF ERROR:
"THE TRIAL COURT FAILED TO EXCLUDE THE 911 AUDIOTAPES UNDER EVIDENCE RULES 401 AND 403(A)."
EIGHTH ASSIGNMENT OF ERROR:
"THE TRIAL COURT ERRED BY ADMITTING HOSPITAL AND AUTOPSY PHOTOGRAPHS UNDER EVIDENCE RULE 403(A). THE RECORD REFLECTS THAT THE PHOTOGRAPHS WERE GRUESOME, CUMULATIVE, AND DID NOT ACCURATELY REFLECT THE CHILD'S CONDITION PRIOR TO ADMISSION. THEIR PROBATIVE VALUE WAS FAR OUTWEIGHED BY THE DANGER OF UNFAIR PREJUDICE, CONFUSION OF THE ISSUES AND MISLEADING THE JURY."
NINTH ASSIGNMENT OF ERROR:
"THE CUMULATIVE EFFECT OF THE TRIAL COURT'S ERRORS DEPRIVED DEFENDANT OF THE CONSTITUTIONAL RIGHT TO A FAIR TRIAL UNDER THE6TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO."
TENTH ASSIGNMENT OF ERROR:
"THE TRIAL COURT ACCEPTED THE JURY VERDICT OF GUILTY, BUT THERE WAS NOT SUBSTANTIAL EVIDENCE UPON WHICH THE JURY COULD REASONABLY CONCLUDE THAT ALL ELEMENTS OF THE OFFENSE HAD BEEN PROVEN BEYOND A REASONABLE DOUBT."
ELEVENTH ASSIGNMENT OF ERROR:
"THE TRIAL COURT ACCEPTED THE JURY VERDICT OF GUILTY, BUT THE CIRCUMSTANTIAL EVIDENCE RELIED UPON TO PROVE THE ESSENTIAL ELEMENTS OF THE CRIME DID NOT SUPPORT A FINDING OF GUILTY. THE EVIDENCE WAS RECONCILABLE WITH REASONABLE THEORIES OF THE DEFENDANT'S INNOCENCE."
 {¶ 3} In September 2004, Stephanie Chandler and her two year old daughter, Kaylee Chandler,[2] moved into the "Wayne Hills" community of Portsmouth, Ohio. The "Wayne Hills" community is apparently an apartment complex operated by the Portsmouth Metropolitan Housing Authority. One week later, appellant and his two children moved in with them.
 {¶ 4} On the night of October 4, 2004, Stephanie left Kaylee in appellant's care while she took a friend to the grocery store. Stephanie returned one half hour later and met "Frog," appellant's friend, who told her that something was wrong with Kaylee. Stephanie entered Frog's apartment and found Kaylee unconscious and unresponsive, with her nose bleeding, her mouth "busted" and contusions all over her head. "Frog" did not have a phone in his apartment and Stephanie left to call her mother while someone else called for an ambulance. Stephanie explained that she needed her mother "to be there" because she "didn't know what to do" with Kaylee in that condition.
 {¶ 5} Emergency personnel rushed Kaylee to the Southern Ohio Medical Center (SOMC) where she was diagnosed with severe head trauma that caused her brain to swell and impeded other bodily functions, including breathing. After Kaylee was stabilized, life-fight helicopter transported her to Children's Hospital in Columbus. After several days, tests revealed that Kaylee was brain-dead. Life support systems were removed and she was pronounced dead on October 8, 2004.
 {¶ 6} On November 23, 2004, the Scioto County Grand Jury returned an indictment charging appellant with murder in violation of R.C. 2903.02(B). At his jury trial, appellant testified that he did nothing to hurt Kaylee and that she incurred various injuries when she fell out of bed, and a short time later, fell down stairs.
 {¶ 7} That explanation did not coincide with the expert opinions of three doctors involved in the case, however. First, SOMC emergency room physician, Dr. James J. Wagenaar testified that her severe head trauma was neither consistent with falling out of bed nor with falling down stairs. Dr. Onsy Ayad, Children Hospital's attending physician in the Pediatric Intensive Care Unit, agreed that Kaylee's injuries were inconsistent with falling down stairs. Finally, Dr. Collie Trent, the forensic pathologist who performed the autopsy, testified that he did not believe that Kaylee's injuries occurred from falling out of bed or falling down stairs. Factors the doctors cited to discount the possibility that Kaylee fell out of bed and fell down stairs included that she did not display "linear bruising" or broken extremities that one might expect to find in such a fall. Dr. Wagenaar also revealed that Kaylee did have a broken arm, but the break was not a "splinter" type break that one could expect from a falling child. Rather, Kaylee displayed a "spiral" fracture consistent with her arm being "twisted" and broken. Also, a "patterned imprint" on the back of Kaylee's head lined up perfectly with a radiator removed from her bedroom. Dr. Trent opined that this patterned imprint, as well as the injuries she sustained, were consistent with Kaylee's head being "forced" into or slammed against that radiator. For these reasons, he determined Kaylee's death a "homicide."
 {¶ 8} Additional evidence, including statements attributed to Shylee Bennett, appellant's own daughter, and his brother, George Bennett, implicated appellant. First, several witnesses, including a Wayne Hills neighbor and appellant's cousin, Jody Westwood, testified that when asked what happened to Kaylee that evening, Shylee told them "daddy threw her down the stairs" or that her father "threw Kaylie upon the bed and her head hit the wall." We note, however, that Jody Westwood also testified that she asked Shylee several other times what happened to Kaylee, and Shylee either responded that she did not know or that Kaylee fell down the stairs. George Bennett, appellant's brother, recounted that he had two separate conversations with appellant and appellant confided that he might have "lost his temper" and that he "could have done it." Appellant, however, denied during his testimony, that he made such a comment to his brother.
 {¶ 9} After four days of testimony, the jury found appellant guilty of murder. The court sentenced appellant to serve fifteen years to life in prison. This appeal followed.[3]
 I {¶ 10} We jointly consider appellant's first, second and third assignments of error because they all involve the statements attributed to appellant's daughter, Shylee Bennett. Appellant asserts that Shylee's statements constitute inadmissible hearsay and should have been excluded from evidence. By allowing several witnesses to testify about those statements, and by instructing the jury as to on how to consider them in its deliberations, appellant concludes the trial court committed reversible error.
 {¶ 11} Appellant offers various arguments why the trial court should have excluded the statements from evidence. First, he cites Evid.R. 601(A) and R.C. 2317.01 for the proposition that generally children under the age of ten cannot testify. Shylee did not testify at trial, however. Additionally, an excited utterance does not generally involve an inquiry relating to a declarant's Evid.R. 601 competency as a witness. In 2 Giannelli 
Snyder, Evidence (2nd Ed. 2001) 97, Section 803.13, the commentators wrote:
"Rules relating to the competency of witnesses (Rule 601) have not been applied to excited utterances. (See 2 McCormick, Evidence § 272, at 210 (5th ed 1998) ('[A]n excited utterance is admissible despite the fact that the declarant was a child and would have been incompetent as a witness for that reason, or the declarant was incompetent by virtue of mental illness.') Most Ohio cases have involved the statements of a young child. (e.g., State v. Duncan, 53 OS(2d) 215, 373 NE(2d) 1234 (1978) (six-year-old child); New York, Chicago St. Loius RR Co v. Kovatch, 120 OS 532, 540, 166 NE 682 (1920) (five-year-old child); State v. Lasecki, 90 OS 10, 106 NE 660 (1914), (four-year-old child); State v. Shoop, 87 App(3d) 462, 471,622 NE(2d) 665 (Hancock 1993), appeal dismissed by 67 OS(3d) 1478,620 NE(2d) 851 (1993) (statements of a two-year-old child identifying perpetrator of sexual abuse `would have been admissible even if the court determined her incompetent to testify.')), and the Ohio Supreme Court has stated that `the inability to establish the competency of a child declarant does not affect the admissibly of the declarations for purposes of Evid.R. 803(2).' (State v. Wallace, 37 Ohio St.3d 87, 88,564 N.E.2d 466 (1988)." Accord State v. Street, 122 Ohio App. 31
79, 701 N.E.2d 50; but see State v. Wallick,157 Ohio App.3d 748, 2003-Ohio-4534, 795 N.E.2d 1252, at ¶ 18 (Tuscarawas 2003) [Where an alleged child victim is declared incompetent to testify at trial because she is found incapable of receiving just impressions of fact and transactions about which she was examined and of relating to those impressions truly, the trial court does not [err] by excluding the alleged victim's statements pursuant to Evid.R. 803(2) and (4).").
 {¶ 12} Next, appellant argues that the trial court erred by allowing reference to Shylee's statements under the "excited utterance" exception of Evid.R. 803(2). An "excited utterance" is defined as a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Id. The Ohio Supreme Court has ruled that a hearsay statement may be admitted under this exception when a trial court determines the following four factors exist: (1) an occurrence startling enough to produce nervous excitement in the declarant, sufficient to still his reflective faculties and make statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and render his statement or declarations spontaneous and unreflective, (2) the declaration, if not strictly contemporaneous with its exciting cause, was made before sufficient time elapsed for such nervous excitement to lose domination over reflective faculties, so that such domination continued to remain sufficient to make statements the unreflective/sincere expression of his actual impressions and beliefs, (3) the declaration related to such startling occurrence or the circumstances of such startling occurrence, and (4) the declarant had an opportunity to personally observe the matters asserted in his declaration. State v. Wallace (1988),37 Ohio St.3d 87, 89, 524 N.E.2d 466; State v. Duncan (1978),53 Ohio St.2d 215, 373 N.E.2d 1234, at paragraph one of the syllabus.
 {¶ 13} There is no question that the events at issue in this case produced a "nervous excitement" in Shylee. Everyone involved in this case testified what the unsettling sight of a two year old child who had suffered blunt head trauma. Moreover, Richard Snyder, the neighbor to whom Shylee made these comments, testified that Shylee was crying and that he attempted to comfort her just before she made the statements. Jody Westwood, Shylee's aunt and guardian, also heard the statements and testified that Shylee was afraid of the police and thought they were coming to get her.
 {¶ 14} Although Shylee's statements may not have been strictly contemporaneous to Kaylee's injuries, sufficient evidence established that the statements were within a time frame where her "nervous excitement" exerted domination over her reflective faculties. The evidence points to Kaylee receiving her injuries during the half hour that her mother was at the store. Upon her return, a crowd gathered near "Frog's" apartment and somebody called an ambulance. Russ Crabtree, one of the emergency personnel, testified that their station was "just minutes away" from "Frog's" apartment and that they responded to the emergency call with lights and siren. Shylee's comments to her aunt and to Snyder occurred shortly after their arrival. From this evidence, one may conclude that Shylee's declarations occurred less than an hour after Kaylee's injuries.
 {¶ 15} Shylee's comments also related to the startling occurrence. Jody Westwood asked Shylee what happened to Kaylee, and Shylee responded that her father threw Kaylee down the stairs or against the wall. Finally, sufficient circumstantial evidence established that Shylee personally observed the matter about which she made the declaration. Dr. Trent testified that the "patterned imprint" on the back of Kaylee's head matched the radiator in Kaylee's bedroom. Appellant testified that Kaylee and Shylee were playing together in the bedroom when Stephanie Chandler went to the store. One can conclude that Shylee could have observed what had occurred.
 {¶ 16} In the end, we must affirm the trial court's decision to apply the Evid.R. 803.(2) "excited utterance" exception if it is "reasonable." Wallace, supra at 90. In light of the evidence set forth above, and after taking into account the trial court's and counsel's careful and considered discussion of this issue during a bench conference, we conclude that the court reasonably determined that Shylee's declarations constitute "excited utterances."
 {¶ 17} Appellant also cites Crawford v. Washington (2004),541 U.S. 36, 59-60, 158 L.Ed.2d 177, 124 S.Ct. 1354, in which the United States Supreme Court held that testimonial statements of witnesses absent from trial may be admitted into evidence only when the declarant is unavailable and when the defendant had a prior opportunity to cross-examine the declarant. Otherwise, the admission of such statements violates a defendant's confrontation rights.
 {¶ 18} We reject appellant's argument in the case sub judice for two reasons. First, appellant did not raise the Crawford
issue at trial. Thus, he waived it for purposes of appeal. See, generally, State v. Peagler (1996), 76 Ohio St.3d 496, 499,668 N.E.2d 489; State v. Lott (1990), 51 Ohio St.3d 160, 174,555 N.E.2d 293. Second, we note that Crawford only involved "testimonial statements." Although the court did not provide a clear test for what constitutes a "testimonial statement," it did say that it was in the nature of a solemn declaration or affirmation made to establish or to prove a fact, such as ex parte in court testimony, affidavits, custodial examinations, depositions, confessions or statements made under circumstances that would lead a witness to reasonably believe that the statement would be available for use at a later trial.541 U.S. at 51-52. By contrast, a "casual remark to an acquaintance" does not bear testimony in the manner which the confrontation clause was meant to address. Id. at 51.
 {¶ 19} We do not believe that Shylee's comments to her guardian and to her neighbor are similar to the testimonial statements at issue in Crawford. We find nothing surrounding the circumstances of her comments that suggests at the time that they could have been used at a later trial against her father. Thus, her non-testimonial comments are governed by the rules of evidence on hearsay. See State v. Blakely, Lucas App. No. L-03-1275, 2006-Ohio-185, at ¶ 24, fn. 2.[4]
 {¶ 20} Appellant also asserts that the trial court erred by instructing the jury as follows with respect to Shylee's statements:
"The State of Ohio presented evidence of a statement by Shylee Bennett concerning a statement of what happened. It is for you to decide whether Shylee Bennett made this statement. You may weigh this statement as you would weigh trial testimony. You should consider all the circumstances surrounding the statement in deciding its weight. Shylee Bennett is unavailable and did not appear as a witness. It is up for you to decide whether this affects the weight you give the statement."
 {¶ 21} Appellant claims that the instruction allowed the jury to "make a series of improper inferences about the requisite proof to establish the essential elements of the crime of murder." We disagree. The instruction simply points out that the jury must decide how much weight and credibility to attach to the hearsay statement.
 {¶ 22} Additionally, assuming arguendo that the jury instruction was erroneous, we find no indication that appellant objected to the instruction. Thus, he waived all but plain error.State v. Skatzes, 104 Ohio St.3d 195, 819 N.E.2d 215,2004-Ohio-6391, at ¶ 52; State v. Underwood (1983),3 Ohio St.3d 12, 444 N.E.2d 1332, at the syllabus. At this point, we find no error, let alone plain error, in the trial court's instruction.
 {¶ 23} For these reasons, we hereby overrule appellant's first, second and third assignments of error.
 II {¶ 24} Appellant's fourth assignment of error asserts that the trial court failed to exclude his brother's testimony from evidence as plain error under R.C. 2317.01, Evid.R. 103(D) and Crim.R. 52(B). We have found no argument included in his brief, however, to explain why this testimony should have been excluded.
 {¶ 25} R.C. 2317.01 states that all witnesses are competent unless they are of unsound mind or under ten years of age. Nothing in the record establishes that George Bennett was not competent as a witness. As for appellant's references to Evid.R. 103(D) and Crim.R. 52(B), appellant must first establish that the admission of this evidence was in error before he can argue that it constitutes "plain error." Appellant, however, fails to do so.
 {¶ 26} Accordingly, we hereby overrule appellant's fourth assignment of error.
 III {¶ 27} Appellant's fifth assignment of error asserts that his brother's testimony should have been excluded under Evid.R. 403(A) and Crim.R. 16(B)(1)(a)(ii). We find these arguments unpersuasive.
 {¶ 28} Evid.R. 403(A) requires the exclusion of evidence when the dangers of unfair prejudice, confusion of issues or misleading the jury substantially outweighs its probative value. Appellant contends that his brother's testimony is "unreliable" and, thus, should have been excluded from evidence. We disagree. Reliability goes to weight and credibility, not admissibility.
 {¶ 29} Appellant also maintains that the jury "would be misled into believing George Bennett actually testified to a statement made by Robert Bennett." This argument is based on the premise that George Bennett did not actually state what his brother told him, but only responded in the affirmative when asked if his brother had told him he "lost his temper" and "could have done it." We find this distinction meaningless. The witness's affirmative response to the question is evidence the same as if he himself had recounted his brother's statement.
 {¶ 30} As for Crim.R. 16(B)(1)(a)(ii), that rule states, inter alia, that the prosecution, (upon the defendant's motion and court order, shall permit a defendant to inspect and copy any "[w]ritten summaries of any oral statement, or copies thereof, made by the defendant or co-defendant to a prosecuting attorneyor any law enforcement officer." (Emphasis added.) We find no indication that any written summary of that statement existed.
 {¶ 31} For these reasons, we hereby overrule appellant's fifth assignment of error.
 IV {¶ 32} Appellant's sixth assignment of error involves the prosecution's use of certain medical records at trial. On December 13, 2004, appellant filed a discovery request under Crim.R. 16(B)(1)(a)-(f). At trial, Dr. Wagenaar was about to testify concerning SOMC medical records when the defense objected because the records were not provided through discovery.[5]
In addition, the prosecution apparently failed to provide a copy of Kaylee's autopsy report. The trial court was also concerned about this issue and granted an immediate recess so counsel could examine the records and determine whether the failure to disclose them would prejudice the defense. When trial resumed, the following colloquy ensued between the trial court and counsel:
"THE COURT: The record should reflect that . . . copies [were] given to defense counsel at about 11:25 and he had about an hour and a half to review them. Do you want to cite any specific prejudice?
[DEFENSE COUNSEL]: Just the fact that I only had tehm [sic] for that short period of time. The autopsy report I didn't get a copy of it to provide our investigator or have a doctor look at it. This not being a long report I might have possibly done that, but I can say with any certainty at this point.
THE COURT: I'm going to allow them in. I'm not happy that records weren't submitted but I'm going to allow [them to be used] . . ."
 {¶ 33} Appellant argues that the trial court's decision was in error and that the records and testimony of all three physicians should have been excluded from evidence. We are not persuaded.
 {¶ 34} To begin, the record indicates that appellant was provided with records from Children's Hospital. Thus, appellant's argument has no bearing whatsoever on Dr. Ayad's testimony. As to the other doctors, discovery violations are governed by Crim.R. 16(E)(3) which provides:
"If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances."
 {¶ 35} This rule gives trial courts broad discretion to decide how to resolve discovery violations and those decisions will not be reversed absent an abuse of that discretion. Statev. Remy, Ross App. No. 03CA2731, 2004-Ohio-3630, at ¶ 41; Statev. Schofield, Washington App. Nos. 01CA36 02CA13, 2002-Ohio-6945, at ¶ 195. We note that an abuse of discretion is more than an error of law or judgment; rather, it implies that the court's attitude is unreasonable, arbitrary or unconscionable. State v. Herring (2002), 94 Ohio St.3d 246,255, 762 N.E.2d 940; State v. Adams (1980), 60 Ohio St.2d 151,157, 404 N.E.2d 144. Furthermore, an abuse of discretion means that the result is so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but, instead, passion or bias. Nakoff v. Fairview Gen. Hosp. (1996), 75 Ohio St.3d 254,256, 662 N.E.2d 1, 3. Appellate courts must not substitute their judgment on these matters for that of the trial court. State exrel. Duncan v. Chippewa Twp. Trustees (1995), 73 Ohio St.3d 728,732, 654 N.E.2d 1254; In re Jane Doe 1 (1991).57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181.
 {¶ 36} Although we share and agree with the trial court's concern over the prosecution's failure to disclose the records, we find no abuse of discretion in the manner that the court resolved this issue. The court granted a recess so appellant could review the records and discern whether it would be prejudiced by their introduction. Appellant did not articulate any unfair prejudice that would result from introduction of the records. Even now on appeal, appellant articulates no discernible prejudice stemming from the prosecution's failure to comply with discovery, other than a vague assertion that disclosure of the records might have helped him to locate other witnesses and evidence, or made more effective use of the private investigator. Without a clear showing that the defense was prejudiced, however, we cannot conclude that the court abused its discretion.
 {¶ 37} We caution the prosecution to exercise caution and vigilance in complying with the discovery rules. Had the trial court exercised its discretion differently, and ordered the records excluded, we, as an appellate court, would have had little difficulty in reaching a different conclusion.
 {¶ 38} Accordingly, we find no abuse of discretion in this instance and, we hereby overrule appellant's sixth assignment of error.
 V {¶ 39} Appellant asserts in his seventh assignment of error that the trial court erred by admitting an audiotape of the 911 emergency call by one of the neighbors at Wayne Hills. We note that as trial defense counsel was explicitly asked if he had any objection to introduction of the tape and he answered in the negative. Thus, appellant waived all but plain error.
 {¶ 40} In this appeal the reason appellant advances to support his argument is that the trial court should have not admitted the tape was because it was "unintelligible." If, however, it was indeed unintelligible, the contents could not have prejudiced appellant so as to warrant recognition of plain error. See Crim.R. 52(B). Furthermore, appellant fails to articulate a clear reason why the admission of an unintelligible audiotape prejudiced the defense. In the absence of such prejudice, we cannot find plain error, even if we assume that any error exists in first place.
 {¶ 41} Accordingly, we hereby overrule appellant's seventh assignment of error.
 VI {¶ 42} Appellant's eighth assignment of error asserts that the trial court erred by admitting hospital and autopsy photographs. We disagree.
 {¶ 43} First, appellant argues that the photographs "did not accurately reflect the child's condition prior to admission." (Emphasis in original.) We, however, fail to see why that is a problem. The reason for the photographs was to show (1) Kaylee's condition in the hospital and (2) the autopsy results. Photographs taken prior to events times would not convey to the jury a proper or accurate image of her condition.
 {¶ 44} Appellant also argues that the photographs are gruesome, cumulative and that their prejudicial effect outweighs any probative value. Again, we disagree.
 {¶ 45} Admittedly, autopsy photographs are generally gruesome and prejudicial. The relevant inquiry, however, is whether that prejudice is outweighed by the photograph's probative value. SeeState v. Skatzes, 104 Ohio St.3d 195, 819 N.E.2d 215,2004-Ohio-6391, at ¶ 116; State v. Maurer (1984),15 Ohio St.3d 239, 264, 473 N.E.2d 768.
 {¶ 46} In the instant case, the autopsy photographs are relevant to explain Kaylee's injuries and to refute the defense theory that the child received her injuries by falling from a bed or falling down a flight of stairs. Autopsy photos are admissible if they can help to prove the "lack of accident." State v.Jackson, 107 Ohio St.3d 53, 836 N.E.2d 1173, 2005-Ohio-5981, at ¶ 83; State v. Monroe, 105 Ohio St.3d 384, 827 N.E.2d 285,2005-Ohio-2282, at ¶ 26.
 {¶ 47} In addition, the photographs support the prosecution's theory that Kaylee sustained massive head trauma when slammed against a radiator. Dr. Trent used the autopsy photographs to connect the "patterned imprint" on the back of Kaylee's head and the bedroom radiator's design. Photographs are admissible if they give the jury an appreciation of the nature and circumstances of the crime. Monroe, supra at ¶ 26; State v. Evans (1992),63 Ohio St.3d 231, 251, 586 N.E.2d 1042. Thus, we agree with the trial court's conclusion that the photographs probative value outweighs any prejudice to the defense.
 {¶ 48} Accordingly, we find no error in the trial court's admission of these photographs and we hereby overrule appellant's eighth assignment of error.
 VII {¶ 49} Appellant asserts in his ninth assignment of error that the "cumulative effect" of those errors in assignments one through eight deprived him of a fair trial. We disagree.
 {¶ 50} The doctrine of cumulative error holds that a judgment may be reversed when the cumulative effect of errors deprives a defendant of his constitutional rights, even though the individual errors may not rise to the level of prejudicial error.State v. Garner (1995), 74 Ohio St.3d 49, 64, 656 N.E.2d 623;State v. DeMarco (1987), 31 Ohio St.3d 191, 509 N.E.2d 1256, paragraph two of the syllabus. In light of the fact that we have not found any prior instances of error, however, that doctrine does not apply in this case.
 {¶ 51} Accordingly, we hereby overrule appellant's ninth assignment of error.
 VIII {¶ 52} Appellant asserts in his tenth assignment of error that insufficient evidence supports his conviction. We disagree.
 {¶ 53} When reviewing the sufficiency of the evidence, we must look to the adequacy of evidence. After viewing the evidence and all inferences reasonably drawn in the light most favorable to the prosecution, we must ask whether any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. State v. Hancock, 108 Ohio St.3d 57,840 N.E.2d 1032, 2006-Ohio-160, at ¶ 34; State v. Jones (2000),90 Ohio St.3d 403, 417, 739 N.E.2d 300, 315. In other words, we must ask whether the evidence, if believed, reasonably supports a finding of guilt beyond a reasonable doubt. See State v.Thompkins (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541; Statev. Jenks (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492.
 {¶ 54} R.C. 2903.02(B) provides that no person shall cause the death of another as a proximate result of committing a violent offense that is a first or second degree felony. The trial court instructed the jury on the crime of felonious assault which occurs when one knowingly causes physical harm to another. See R.C. 2903.11(A)(1). We conclude that sufficient evidence was adduced at trial to establish the elements of both offenses.
 {¶ 55} The central issues in this case include (1) whether Kaylee died in a fall or at the hands of another person, and (2) if by another person, that person's identity. George Bennett's testimony, and statements attributed to Shylee, implicate appellant. Moreover, three expert witnesses testified Kaylee could not have received her injuries by either falling out of bed or falling down stairs. Kaylee was in appellant's care while her mother visited a store. The logical conclusion from this evidence is that appellant, in an attempt to protect himself from criminal culpability, stated that Kaylee's injuries occurred as a result of falls. Although Stephanie Chandler testified that her daughter seemed "phased" or "shook up" before she left to go to the store, Kaylee could stand on her own. Once again, appellant was the only adult in the residence with her at the time in question. When Stephanie returned, Kaylee was unconscious, unresponsive and barely breathing. The medical evidence revealed that Kaylee sustained blunt trauma. Dr. Trent testified that the "patterned imprint" on Kaylee's head matched a bedroom radiator. This is sufficient for the jury to conclude that appellant caused Kaylee serious physical harm and, as a result, he proximately caused her death.
 {¶ 56} Accordingly, we hereby overrule appellant's tenth assignment of error.
 XII {¶ 57} Appellant asserts in his eleventh assignment of error, citing State v. Kulig (1974), 37 Ohio St.2d 157,309 N.E.2d 897, that the circumstantial evidence adduced at trial was reconcilable with reasonable theories of innocence and, as a matter of law, cannot support a guilty verdict.
 {¶ 58} First, we note that the Ohio Supreme Court overruledKulig in State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, at paragraph one of the syllabus. Second, even underKulig, we do not believe that the evidence adduced at trial is irreconcilable with appellant's theory of innocence. Appellant's theory is that Kaylee sustained her injuries falling out of bed or falling down stairs. The prosecution's expert witness opinions that Kaylee could not have received her injuries in that manner. Appellant did not rebut those opinions. For these reasons, we hereby overrule appellant's eleventh assignment.
 {¶ 59} Having reviewed all errors assigned in the brief, and after finding merit in none, we hereby affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, P.J. McFarland, J.: Concur in Judgment Opinion.
[2] Kaylee's name is also spelled "Kaylie" in some parts of the record. In his brief, appellant refers to the child as "Kay Lee."
[3] At this juncture we must address several issues with appellant's brief. First, appellant's brief advances a single, joint argument for assignments of error one through nine, and another joint argument for assignments of error ten and eleven. This is not permitted under the appellate rules. App.R. 16(A)(7) requires appellants to separately argue each assignment of error. Failure to do so constitutes grounds to disregard them. See App.R. 12(A)(2). Thus, we would be within our authority to summarily overrule appellant's assignments of error and affirm the judgment of conviction and sentence. See State v. Caldwell
(1992), 79 Ohio App.3d 667, 677, 607 N.E.2d 1096, at fn. 3;State v. Houseman (1990), 70 Ohio App.3d 499, 507,591 N.E.2d 405; Park v. Ambrose (1993), 85 Ohio App.3d 179, 186,619 N.E.2d 469. In the interests of justice, however, we will review the merits of the assignments of error.
[4] We believe that our decision is reconcilable with State v.Siler, 164 Ohio App.3d 680, 843 N.E.2d 863, 2005-Ohio-6591. InSiler, the Court acknowledged the difficulty in determining that the three-year-old out-of-court declarant could formulate a reasonable belief that his out-of-court statement "would be available for use at a later trial." Id. at ¶ 9. Nevertheless, the child's comments were made during a police initiated interview. Id. at ¶¶ 13-47. The Court concluded that regardless of whether the child could formulate a belief that his statement would be used at trial, the circumstances fell within theCrawford definition of "testimonial evidence." See2005-Ohio-6591 at ¶ 49. By contrast, in the instant case Shylee made out-of-court declarations to a neighbor and to her guardian, not during a police interview. Thus, the declarations in Siler
differ from those in the case sub judice.
[5] Although the record is not entirely clear on this point, it appears that the appellant was provided Children's Hospital medical records, but not SOMC or the coroner's office.