[Cite as *State v. Halfhill*, 2022-Ohio-3242.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
GALLIA COUNTY

STATE OF OHIO, : 
 : 
    Plaintiff-Appellee, :     Case No. 21CA4
 : 
    v. : 
 :     <u>DECISION AND</u>
GREGORY A. HALFHILL, :     <u>JUDGMENT ENTRY</u>
 : 
    Defendant-Appellant. : 

_____
<u>APPEARANCES:</u>

Richard H. Hedges, Gallipolis, Ohio, for Appellant.

Brynn Saunders Noe, Gallipolis City Solicitor, Gallipolis, Ohio, for Appellee.
_____

Smith, P.J.

{¶1} Appellant, Gregory Halfhill, appeals his conviction in the Gallipolis Municipal Court after a jury found him guilty of one count of domestic violence, a first-degree misdemeanor in violation of R.C. 2919.25(A)(1).  On appeal, Halfhill raises two assignments of error contending 1) that the trial court committed reversible error by accepting testimony that the alleged victim walked two or more miles with an injured foot to a friend's house without needed medical supportive devices; and 2) that the trial court committed reversible error by failing to recognize the veracity and eyewitness testimony of the defense witness that

indicated Halfhill's location at the time of the alleged incident.  For the reasons that follow, we find no merit to either of Halfhill's assignments of error.  Accordingly, the judgment of the trial court is affirmed.

FACTS

{¶2} On February 22, 2021, Gregory Halfhill was charged with one count of domestic violence in violation of R.C. 2919.25(A) stemming from an incident that occurred on February 20, 2021.  A criminal complaint filed in the Gallipolis Municipal Court stated that Deputy Garrett Hill responded to 9771 State Route 160 and took a report from Kasandra Vance regarding a domestic dispute that occurred between herself and Gregory Halfhill at the home they shared, located at 128 Church Street, Bidwell, Ohio.  Vance reported that she and Halfhill had gotten into a verbal altercation which led to Halfhill becoming physical and striking her multiple times with a closed fist and choking her to the point of almost passing out.  Halfhill denied the charges and the matter proceeded to a bench trial.

{¶3} The State presented three witnesses at trial, including the responding deputy, Garrett Hill, the victim, Kasandra Vance,[1] and Kayla Griffith, Vance's friend.  Deputy Hill testified that upon encountering Vance, "she had visible marks all over her," including on her neck, and "her left eye appeared to be swollen."  He

---

[1] The trial transcript indicates that the victim has also gone by the last name of Metz and although her first name is spelled as Kasandra in the criminal complaint, the trial transcript spelled her name as Cassandra.

also testified that "there appeared to be some knots on the top of her head" and that there were marks on her arms from where Vance stated she had been "grabbed" by Halfhill. He testified that she seemed to be distressed. He testified that he photographed her injuries and those photographs were admitted into evidence. Deputy Hill also testified that Vance informed him that "she had fled" her residence that she shared with Halfhill and gone to Kayla Griffith's house, where the police report was taken. The deputy testified that Griffith's house was about two to three miles away from the Vance/Halfhill residence.

{¶4} Vance also testified at trial. She testified that she had been living with Halfhill for about two months when the incident occurred. When asked what Halfhill did to her, she responded that Halfhill "* * * choked [her], hit [her] in the head um, wrestled [her] to the floor, slammed [her] head to the floor[,]" and "he said he was going to kill [her]." She testified that she finally had an opportunity to leave when Halfhill took her phone and went to his room. She explained that she went out the front door and walked to her friend's house, which was over a mile away, in the middle of the night. She also testified that after arriving at Griffith's house, she called the Sheriff and then went to the hospital. She testified regarding the discharge papers given to her by the hospital, explaining that the papers also described an additional injury that occurred to her foot during the incident. She stated that internal hardware "from a previous surgery" was coming out of the top

of her right foot. On cross examination, Vance testified that when she left the house it was sleeting and cold outside and that although she had no coat or socks on, she did have on a shirt, pants and boots. She clarified that she did have shoes on and was not barefooted.

{¶5} Kayla Griffith also testified for the State. She testified that Vance showed up at her house crying, cold and upset. She described her as being "beat up pretty much." She testified that Vance "had snot running all over her face and her eyes were swollen where she was crying and she was just hysterical pretty much." Griffith testified that Vance stated "Greg beat me up." She further testified that Vance had a black eye, bruises and scratches on her neck, a choke mark on her neck, a bruise on her foot and swelling and scratches under her arm. Griffith further testified that after the deputy left, she took Vance to the emergency room.

{¶6} Halfhill testified on his own behalf. Although he initially testified that Vance did not reside with him on the night at issue, he also testified that he had told her she could move into his house with her son if she got custody of him, and that he had purchased a bed and set it up for her son. Halfhill testified that he was not at home on the night in question because he was recovering from pneumonia and was staying at his mother's house. He stated that he had gone to the hospital on February 17, 2021, and then went home with his mother in order for his mother

to care for him.  He testified that he remained at his mother's house until February

22, 2021.[2]  At this juncture, the trial court pointed out a problem with Halfhill's

testimony, as follows:

> [He] just testified to an alibi in contravention of the law because
> Revised Code Section 2945.58 says that testimony to establish
> an alibi on the defendant's behalf shall be provided in writing to
> the prosecuting attorney of the defendant's intention to claim
> such notice no later than seven days before the trial and that
> notice shall include specific information as to the place in which
> the defendant claims to have been at the time of the alleged
> offense.

{¶7} The court then stated that it would allow the alibi testimony despite the

failure to comply with R.C. 2945.58

{¶8} Halfhill's mother, Ruth Daniels, also testified.  She testified that Vance

did not reside with her son and that she had taken her son to the Urgent Care on

February 17, 2021, because he was sick.  She testified that she then took him home

with her where he stayed the whole week.  She testified that it had snowed that

whole week and that she had been out of school.  She testified that he stayed with

her from February 17, 2021, through February 21, 2021 and that he did not have a

vehicle while he was staying there and, thus, if he had gone anywhere she would

have had to drive him.  She further testified on cross examination that she

---

[2] Although Halfhill testified that he had medical records of his hospital visit, no records were offered into evidence.

remembered the exact dates because she checks her messages and keeps a daily log as president for the local teacher's association.

{¶9} In rendering its decision, the trial court stated that it was satisfied the State had demonstrated that Vance and Halfhill were "family" or "household members." It went on to note that although it had permitted the alibi testimony "in the interest of justice," it was "not going to assign great weight to that alibi for a couple of reasons." One of the reasons related to the fact that Halfhill had recently entered a plea of guilt to driving under suspension. Another reason related to the fact that the court took judicial notice of its own docket, which revealed that Halfhill had been indicted for other unrelated offenses that occurred while he was "allegedly under his mother's care." Thereafter, the court went on to find Halfhill guilty of domestic violence and immediately proceeded to sentencing. It is from this conviction for domestic violence that Halfhill now brings his timely appeal, setting forth two assignments of error for our review.

## ASSIGNMENTS OF ERROR

I.    THE COURT COMMITTED REVERSIBLE ERROR BY ACCEPTING TESTIMONY THAT THE ALLEGED VICTIM WALKED TWO OR MORE MILES WITH AN INJURED FOOT TO A FRIEND'S HOUSE WITHOUT NEEDED MEDICAL SUPPORTIVE DEVICES.

II.    WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO RECOGNIZE THE VERACITY AND EYE-WITNESS TESTIMONY OF THE DEFENDANT'S WITNESS INDICATING

THE LOCATION OF THE DEFENDANT AT THE
TIME OF THE ALLEGED INCIDENT.


ASSIGNMENTS OF ERROR I AND II

{¶10} As set forth above, in his first assignment of error Halfhill contends that the trial court committed reversible error by accepting testimony that the alleged victim walked two or more miles with an injured foot to a friend's house "without needed supportive devices."[3]  More specifically, Halfhill argues that the trial court erred "by accepting the description of the alleged victim's behavior after the alleged incident," in particular that she walked to a friend's house that was "two or more miles [away] in in-climate [sic] weather at night."  He argues that because the victim's "feet were injured and she was barefoot," that her "story indicates a lack of reasonableness and sufficient logic as question [sic] the *veracity [sic] of alleged [sic] victim."

{¶11} In his second assignment of error, Halfhill contends that the trial court committed reversible error by failing "to recognize the veracity and eye-witness testimony of the Defendant's witness indicating the location of the Defendant at the time of the alleged incident."  In his statement of issues, he states that there is a question "[w]hether the Court committed reversible error "by failing to consider

---

[3] There is no indication in the record as to what "supportive devices" Halfhill claims Vance should have been using.

the eye witness testimony stating the location of the Defendant at the time of the incident which makes the court's decision against the manifest weight of the evidence."

Threshold Issues

{¶12} Before addressing Halfhill's first and second assignments of error, we must note several procedural deficiencies. Initially, we note that Halfhill's brief fails to include a statement of facts, as required by App.R. 16(A)(6). Additionally, Halfhill has failed to separately argue his first and second assignments of error, as required by App.R. 16(A)(7). Instead, Halfhill has presented just one argument in support of both assignments of error. Under App.R. 12(A)(2) we may choose to disregard any assignment of error that an appellant fails to separately argue. Therefore, we could exercise our discretionary authority to summarily overrule Halfhill's first and second assignments of error. *See Bray v. Bray*, 4th Dist. Ross. No. 10CA3167, 2011-Ohio-861, ¶ 18, citing *Newman v. Enriquez*, 171 Ohio App.3d 117, 2007-Ohio-1934, 869 N.E.2d 735, ¶ 18; *Mtge. Electronic Registrations Sys. v. Mullins*, 161 Ohio App.3d 12, 2005-Ohio-2303, 829 N.E.2d 326, ¶ 22, citing *Park v. Ambrose*, 85 Ohio App.3d 179, 186, 619 N.E.2d 469 (1993); *State v. Caldwell*, 79 Ohio App.3d 667, 677, 607 N.E.2d 1096, FN. 3 (1992).

{¶13} Further, aside from failing to separately argue his assignments of error, the assignments of error themselves do not correspond with or reflect the substantive arguments contained in the body of the brief. As set forth above, both of Halfhill's assignments of error seem to be limited to asserting error with respect to the trial court's admission or exclusion of evidence and the weight afforded to the evidence that was admitted. However, the argument portion of his brief seems to assert a sufficiency of the evidence argument that is not reflected in the assignments of error. Also, although not stated in the assignments of error nor argued in the argument portion of the brief, the conclusion portion of Halfhill's brief argues that the decision of the trial court is against the manifest weight of the evidence and also asserts that "[p]rior bad acts cannot be considered pursuant to Evid.R. 404(B)." Unfortunately, the argument portion of Halfhill's brief contains no argument whatsoever regarding the admission of prior bad acts or how the trial court may have erred in this regard, nor does his brief contain an assignment of error related to the admission of evidence regarding prior bad acts.

{¶14} As this Court further explained in *Bray v. Bray, supra*:

> " 'If an argument exists that can support [an] assignment of error,
> it is not this court's duty to root it out.' " *Thomas v. Harmon*,
> Lawrence App. No. 08CA17, 2009-Ohio-3299, at ¶ 14, quoting
> *State v. Carman*, Cuyahoga App. No. 90512, 2008-Ohio-4368,
> at ¶ 31. " 'It is not the function of this court to construct a
> foundation for [an appellant's] claims; failure to comply with the
> rules governing practice in the appellate courts is a tactic which
> is ordinarily fatal.' " *Catanzarite v. Boswell*, Summit App. No.

24184, 2009-Ohio-1211, at ¶ 16, quoting *Kremer v. Cox* (1996),
114 Ohio App.3d 41, 60, 682 N.E.2d 1006.

*Bray v. Bray, supra*, at ¶ 12 (also noting that App.R. 16(A)(7) requires an appellant to include in its brief, under the headings and in the order indicated, an argument stating its contentions in support of each assignment of error and the reasons in support of the contentions, along with citations to authorities, statutes, and parts of the record on which the appellant relies).

{¶15} Because Halfhill has utterly failed to comply with App.R. 16(A)(7) with respect to his prior bad acts assertion, we cannot conclude that this case presents a situation where the interests of justice require that we address that potential argument. Thus, we decline to address it. Nevertheless, despite having discretion to disregard all of the arguments contained in Halfhill's brief, we choose to exercise our discretion to address his sufficiency and manifest weight of the evidence arguments.

## Standard of Review

{¶16} A claim of insufficient evidence invokes a due process concern and raises a question of whether the evidence is legally sufficient to support the verdict as a matter of law. *See State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *Id.* "Therefore, our review is de novo." *State v. Groce*, 163

Ohio St.3d 387, 2020-Ohio-6671, 170 N.E.3d 813, ¶ 7, citing *In re J.V.*, 134 Ohio

St.3d 1, 2012-Ohio-4961, 979 N.E.2d 1203, ¶ 3.

{¶17} When reviewing the sufficiency of the evidence, our inquiry focuses

primarily upon the adequacy of the evidence; that is, whether the evidence, if

believed, reasonably could support a finding of guilt beyond a reasonable doubt.

*Thompkins* at syllabus.  The standard of review is whether, after viewing the

probative evidence and inferences reasonably drawn therefrom in the light most

favorable to the prosecution, any rational trier of fact could have found all the

essential elements of the offense proven beyond a reasonable doubt.  *See Jackson*

*v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v.*

*Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991).  Furthermore, a reviewing

court is not to assess "whether the state's evidence is to be believed, but whether, if

believed, the evidence against a defendant would support a conviction."

*Thompkins* at 390 (Cook, J., concurring).

{¶18} Thus, when reviewing a sufficiency-of-the-evidence claim, an

appellate court must construe the evidence in a light most favorable to the

prosecution.  *See State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996);

*State v. Grant*, 67 Ohio St.3d 465, 477, 620 N.E.2d 50 (1993).  A reviewing court

will not overturn a conviction on a sufficiency-of-the-evidence claim unless

reasonable minds could not reach the conclusion that the trier of fact did.  *State v.*

*Tibbetts*, 92 Ohio St.3d 146, 162, 749 N.E.2d 226 (2001); *State v. Treesh*, 90 Ohio

St.3d 460, 484, 739 N.E.2d 749 (2001).

{¶19} However, when an appellate court considers a claim that a conviction

is against the manifest weight of the evidence, the court must dutifully examine the

entire record, weigh the evidence and all reasonable inferences, and consider the

witness credibility. *See State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, 54

N.E.3d 80, ¶ 151; citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d

541 (1997). A reviewing court must bear in mind, however, that credibility

generally is an issue for the trier of fact to resolve. *See State v. Issa*, 93 Ohio St.3d

49, 67, 752 N.E.2d 904 (2001); *State v. Murphy*, 4th Dist. Ross No. 07CA2953,

2008-Ohio-1744, ¶ 31. " 'Because the trier of fact sees and hears the witnesses and

is particularly competent to decide "whether, and to what extent, to credit the

testimony of particular witnesses," we must afford substantial deference to its

determinations of credibility.' " *Barberton v. Jenney*, 126 Ohio St.3d 5, 2010-

Ohio-2420, 929 N.E.2d 1047, ¶ 20, quoting *State v. Konya*, 2nd Dist. Montgomery

No. 21434, 2006-Ohio-6312, ¶ 6, in turn quoting *State v. Lawson*, 2nd Dist.

Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997). As the Court

explained in *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972

N.E.2d 517:

" '[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment must be made in favor of the judgment and the finding of facts.

* * *

If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.' "

*Eastley, supra* at ¶ 21, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273, FN. 3 (1984), in turn quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191-192 (1978).

{¶20} Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact-finder, as long as a rational basis exists in the record for its decision. *See State v. Picklesimer*, 4th Dist. Pickaway No. 11CA9, 2012-Ohio-1282, ¶ 24; *see also State v. Howard*, 4th Dist. Ross No. 07CA2948, 2007-Ohio-6331, ¶ 6 ("We will not intercede as long as the trier of fact has some factual and rational basis for its determination of credibility and weight").

{¶21} Once the reviewing court finishes its examination, the court may reverse the judgment of conviction only if it appears that the fact-finder, when resolving the conflicts in evidence, "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist. 1983). *See also Thompkins, supra*, at 387. If the prosecution presented substantial

credible evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, the judgment of conviction is not against the manifest weight of the evidence. *See State v. Eley*, 56 Ohio St.2d 169, 383 N.E.2d 132, syllabus (1978), superseded by state constitutional amendment on other grounds in *State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997), *see also Eastley* at ¶ 12 and *Thompkins* at 387 (explaining that a judgment is not against the manifest weight of the evidence when "the greater amount of credible evidence" supports it). Thus, " '[w]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the jury believed the prosecution testimony.' " *State v. Cooper*, 170 Ohio App.3d 418, 2007-Ohio-1186, 867 N.E.2d 493, ¶ 17 (4th Dist.), quoting *State v. Mason*, 9th Dist. Summit No. 21397, 2003-Ohio-5785, ¶ 17. Instead, a reviewing court should find a conviction against the manifest weight of the evidence only in the " ' "exceptional case in which the evidence weighs heavily against the conviction." ' " *State v. Lindsey*, 87 Ohio St.3d 479, 483, 721 N.E.2d 995 (2000), quoting *Thompkins* at 387, in turn quoting *Martin* at 175.

## Legal Analysis

{¶22} Although Halfhill sets forth the relevant law and standard of review for a sufficiency of the evidence argument, a close reading of his brief

demonstrates that he fails to actually argue that his conviction was not supported by sufficient evidence. Instead, his brief essentially recounts the testimony offered at trial and raises arguments regarding the trial court's credibility determinations and the weight afforded to the evidence. Thus, the arguments seem to challenge the manifest weight of the evidence, not the sufficiency of the evidence. For instance, Halfhill notes "there was clearly differing testimony between the parties in this case[,]" and argues that the victim's "injuries could have been caused by another person in light of the defense testimony indicating Halfhill was not present" on the night at issue. Despite the inartful phrasing of the assignments of error and arguments, as indicated above, we will undertake both a sufficiency of the evidence and manifest weight of the evidence analysis.

{¶23} The record before us indicates that Halfhill was convicted of one count of domestic violence in violation of R.C. 2919.25(A), which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." Halfhill concedes that the responding deputy testified at trial and stated that he took photos of the victim's injuries as presented to him, but Halfhill notes that the deputy admitted he was not present at the time the injuries were sustained, nor was Halfhill present when the report was made. Halfhill also concedes that the victim's friend, Kayla Griffith, testified on behalf of the State and explained that the victim showed up at her house with injuries, but notes that

Griffith testified that Vance declined emergency transportation to the hospital and instead elected to go to the emergency room by private transport. Halfhill notes that Griffith did not witness the injuries occur or witness Halfhill inflicting the injuries. Halfhill also concedes that the victim, Kasandra Vance, testified on her own behalf and explained that Halfhill inflicted her injuries, but he notes that she was unable to name any witnesses to the incident. He also essentially asks us to view with skepticism the victim's testimony that she walked to her friend, Kayla Griffith's, house afterwards in the cold, which was over two miles away and despite having sustained an injury to her foot. Halfhill claims that not only was Vance's foot injured, but she was barefooted.

{¶24} Halfhill also points to the fact that he testified on his own behalf, claiming that he was recovering from pneumonia at the time of the alleged events and was staying at his mother's house at the time of the alleged incident. He also points to his mother's testimony, which confirmed that Halfhill had been ill and was staying at her house on the night in question. Halfhill argues that his mother "was proven herself a credible person as a school teacher, teacher's union leader, and valuable contributor to River Valley Schools." Halfhill argues that "credibility or worthiness of belief is an important factor in most criminal trials" and that his mother's testimony corroborated his own testimony that he was not present at his

home, where the alleged events occurred on the date of the incident. He argues that the "defense presented the credentials of this witness without challenge."

{¶25} In the conclusion portion of his brief, Halfhill argues that the testimony of Griffith "must be discounted as she was not present for any incidents that are alleged to have occurred[,] and only "relied on the alleged victim's representation not actual [sic] witnessing any injury[,]" as compared to the defense witness, Ruth Daniels, who "testified she was with the defendant for days before the incident and afterwards." Halfhill argues "the credibility of the defense should not be overlooked." Halfhill further argues "[t]he cause of the injuries and the person who perpetrated them are unknown based upln [sic] the evidence presented" and therefore, the decision should be reversed.

{¶26} As set forth above, when reviewing whether a conviction is supported by sufficient evidence, it is not this Court's role to question whether the evidence is to be believed, but rather, we must consider whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt. Furthermore, in our consideration, we must view the evidence in a light most favorable to the prosecution. We conclude that here, the evidence presented by the State at trial, if believed, could support a finding of guilt beyond a reasonable doubt.

{¶27} Regarding the victim's testimony, most if not all of Halfhill's arguments challenge the trial court's admission of evidence as well as the credibility of the evidence and the weight afforded to the evidence. For example, Halfhill argues that the victim's testimony was not believable to the extent that she claimed he injured her, without having any eyewitness testimony, and also to the extent she claimed she fled the couple's residence and walked two miles to her friend's house in the cold with an injured foot. As such, he seems to argue that the trial court erred in admitting her testimony and further erred by believing her testimony.

{¶28} However, "[t]he admission or exclusion of evidence generally rests within a trial court's sound discretion." *State v. McCoy*, 4th Dist. Pickaway No. 19CA1, 2020-Ohio-1083, ¶ 20. "Thus, absent an abuse of discretion, an appellate court will not disturb a trial court's ruling regarding the admissibility of evidence." *Id.* An abuse of discretion is "an unreasonable, arbitrary, or unconscionable use of discretion, or * * * a view or action that no conscientious judge could honestly have taken." *State v. Brady*, 119 Ohio St.3d 375, 2008-Ohio-4493, 894 N.E.2d 671, ¶ 23. Further, as noted by the Ninth District Court of Appeals, "[d]omestic violence is often a private crime, occurring in one's own home." *State v. Blonski*, 125 Ohio App.3d 103, 114, 707 N.E.2d 1168 (9th Dist.); *see also Felton v. Felton*, 79 Ohio St.3d 34, 44, 679 N.E.2d 672 (1997) (in an appeal regarding the issuance

of a domestic violence civil protection order, the Court observed that "[d]omestic violence is seldom committed in the presence of eyewitnesses[,]" and as such, "[o]ften the only evidence of domestic violence is the testimony of the victim"). Thus, the State was not required to have eyewitness testimony supporting the victim's version of events, as her testimony did not require corroboration. Moreover, to the extent this argument underlies Halfhill's sufficiency of the evidence claim, "[c]orroboration * * * goes to credibility, which is a matter for manifest weight of the evidence, not sufficiency." *Cleveland v. Watson*, 8th Dist. Cuyahoga No. 108746, 2020-Ohio-3284, ¶ 37.

{¶29} Here, we cannot conclude that the trial court erred or abused its discretion in permitting the victim to testify regarding her account of the events that led to her injuries nor in taking her testimony into consideration, despite the fact that there was no eyewitness testimony corroborating her version of events. Further, the victim's testimony alone, if believed, reasonably could support a finding of guilt beyond a reasonable doubt. Moreover, we cannot say the trial court, as the trier of fact, clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The trial court was in the best position to hear the testimony, observe the witnesses and evidence, and determine their reliability. Thus, we hold that the trial court's finding that Halfhill was guilty of domestic violence was supported by sufficient

evidence and was not against the manifest weight of the evidence. Accordingly, we find no merit to the arguments raised under Halfhill's first assignment of error.

{¶30} In his second assignment of error, Halfhill seems to argue that the trial court should have believed his mother's testimony over the victim's testimony, claiming that his mother was credible and was an "eye witness" to his whereabouts on the night in question. He claims that the trial court "committed reversible error by failing to recognize the veracity and eye-witness testimony" of his mother. Contrary to Halfhill's arguments, the trial court specifically stated on the record that it had considered Daniels' testimony, but it stated that it was discounting Halfhill's alibi testimony due to information indicating Halfhill had been charged with committing unrelated criminal offenses during the time period he was allegedly staying at his mother's house. Moreover, even when conducting a manifest weight of the evidence analysis, great deference is given to the trial court, as the finder of fact, with respect to the weight afforded to the evidence and the credibility of witnesses. *See State v. Benge*, 4th Dist. Adams No. 20CA1112, 2021-Ohio-152, ¶ 28, citing *State v. Schroeder*, 2019-Ohio-4136, 147 N.E.3d 1, ¶ 61 (4th Dist.). Here, the trial court was free to accept or reject the testimony of Halfhill's mother and was free to make credibility determinations favoring the State's witnesses. Therefore, it was within the trial court's discretion, as the finder of fact, to afford more weight to the testimony of Vance and Griffith, as opposed to

Halfhill and Daniels.  Based upon the record before us, we simply cannot conclude that the court lost its way or that this case constitutes an exceptional case where the evidence weighs heavily against the conviction.  Thus, we find no merit to the arguments raised under Halfhill's second assignment of error.

{¶31} Accordingly, having found no merit in either of the assignments raised on appeal, the judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED.**

**<u>JUDGMENT ENTRY</u>**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Gallipolis Municipal Court to carry this judgment into execution.

<u>IF</u> A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J. and Wilkin, J. concur in Judgment and Opinion.

For the Court,

_____

Jason P. Smith
Presiding Judge

**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**